[Civ. No. 57486. Second Dist., Div. Five. Apr. 25, 1980.]

MITCHELL WILLIAMS, Plaintiff, Cross-defendant and Respondent, v.
KAPILOW & SON, INC., Defendant, Cross-complainant and Appellant.

**COUNSEL**

Schnider & Schnider and Robert Schnider for Defendant, Cross-complainant and Appellant.

David Pettit for Plaintiff, Cross-defendant and Respondent.

OPINION

HASTINGS, J.—This is an appeal from a municipal court order granting plaintiff's motion for summary judgment. It is before us upon transfer from the Appellate Department of the Los Angeles Superior Court. (Rule 62(a), Cal. Rules of Court.)

The case involves the scope and validity of section 1689.5 et seq. of the Civil Code[1] governing "home solicitation contracts."

The facts are these: On January 21, 1976, plaintiff's home burned down. That same day two agents of defendant, a public insurance adjusting firm, appeared, unsolicited, at plaintiff's demolished home and entered into a contract with him undertaking to negotiate plaintiff's claims against his fire insurance carrier for a 10 percent recovery fee. Although the coverage amount of the policy was $17,500, the company eventually paid plaintiff $18,723. Plaintiff, contending that he was liable to defendant only for 10 percent of the difference between his recovery and the policy amount, paid defendant $122.30. Defendant claimed a right under its contract with plaintiff to 10 percent of plaintiff's entire settlement with the insurance carrier. The language of the contract supports defendant's interpretation; however, plaintiff had an entirely different string to his bow. He filed suit to rescind the contract pursuant to section 1689.7, subdivision (e) on the ground that the contract contained no notice of his right to cancel as required by section 1689.7, subdivisions (a) through (d)[2] and sought recovery of his $122.30 pursuant to section 1689.10. Defendant cross-complained for $1,750, the difference between the amount plaintiff had paid and the total amount defendant claimed under the contract.

Plaintiff successfully moved for summary judgment based upon the undisputed facts that the contract was entered into at his home and that it did not comply with the notice provisions of section 1689.7. Defendant has appealed alleging: (1) that by exempting certain occupations

---

[1] All references are to the Civil Code unless otherwise specified.

[2] The basic right of the buyer to cancel a home solicitation contract within three "business days" is set forth in section 1689.6. Section 1689.7, subdivisions (a) through (d), sets forth in detail the requirements for notifying the buyer of his rights under section 1689.6. Subdivision (e) of section 1689.7 provides that the buyer retains his right to cancel until the seller complies with the provisions of subdivisions (a) through (d).

from the purview of the statute, the Legislature has acted arbitrarily so as to deny equal protection of the laws to those occupations which are covered; (2) that section 1689.5 does not apply to the type of services performed by defendant; and (3) that section 1689.5 et seq. were not intended to apply to the type of solicitation engaged in by defendant. In keeping with longstanding judicial policy to reach constitutional issues only if it is necessary to do so after all other issues have been decided, we deal first with these latter two contentions.

Section 1689.5, subdivision (a) provides, in pertinent part: "'Home solicitation contract...' means any contract...for the sale, lease or rental of goods or services or both, made at other than appropriate trade premises in an amount of twenty-five dollars ($25) or more...." The term "services" is defined by section 1689.5, subdivision (d) as follows: "'Services' means work, labor and services, including, but not limited to, services furnished in connection with the repair, alteration, or improvement of residential premises, or services furnished in connection with the sale or repair of goods...and courses of instruction, regardless of the purpose for which they are taken, but does not include the services of attorneys, real estate brokers and salesmen, securities dealers or investment counselors, physicians, optometrists or dentists, nor the sale of insurance which is not connected with the sale of goods or services as defined herein, nor services for which the tariffs...is [sic] required by law to be filed with and approved by the federal government or any official or...agency of the United States or of the State of California."

Defendant contends that section 1689.5, subdivision (d) applies only to services rendered in connection with a commercial product or physical object. The language of the statute does not support such a restricted interpretation of its scope. It specifically provides that the definition of "services" includes, *but is not limited to*, the illustrative examples set forth. Furthermore the section specifically includes courses of instruction which, typically, would not relate to a commercial product and, contrary to defendant's assertion, do not involve the transfer of a tangible item.

Defendant further argues that his services fall within the exemption of section 1689.5, subdivision (d) because he serves in an agency rela-

tionship to his clients equivalent to that of an attorney, broker or investment counselor and that the statute exempts all such agency relationships. Again, the language of the statute does not permit the interpretation which defendant would place upon it. Securities dealers and optometrists deal in commercial products. Real estate salesmen and brokers negotiate the transfer of real property, the most tangible of commodities. Clearly the enumerated exemptions were intended to exclude specific occupations and were not intended by the Legislature to be illustrative of an intent to exclude all agency relationships from the purview of the statute. Had that been the legislative intent, language better suited to the purpose would undoubtedly have been chosen.

 Defendant also argues that the statute only covers door-to-door solicitations and that its activities do not fall within the statute's coverage because it does not solicit business door-to-door, but only from potential customers known to have suffered an insured loss. In *Weatherall Aluminum Products Co.* v. *Scott* (1977) 71 Cal.App.3d 245 [139 Cal.Rptr. 329], we held that a contract entered into at the buyer's home fell within the purview of the statute even though the buyer there had initiated negotiations by telephoning the seller and expressing an interest in his product. We explained in *Weatherall* that the emphasis of the statute was on the place at which the contract was made and not on whether contact was initiated by the buyer or the seller. Having arrived, unbidden, at plaintiff's residence on the very day his home burned down, a time at which plaintiff was undoubtedly under serious emotional stress, defendant cannot escape the strictures of the statute merely because its agents did not also knock on other doors on the block.

Our resolution of the statutory issues not having determined the appeal, we turn finally to the constitutional question. The essence of defendant's contention is that the occupations exempted from the coverage of the statute by section 1689.5, subdivision (d) are not distinguishable in any relevant respect from nonexempt occupations and that the statute therefore denies equal protection to defendant and other "sellers" subject to its provisions.

 When a statute challenged on equal protection grounds affects or impinges upon a "fundamental interest" or differentiates on the basis

of a "suspect class"—i.e. race, religion, sex, national origin—the classifications drawn by the Legislature will be strictly scrutinized by the courts and will be upheld only if it is found that the classifications are necessary to further a compelling state interest. Where neither a fundamental interest nor a suspect class is involved, the courts recognize a wide degree of discretion in the Legislature and, indulging presumptions in favor of the validity of the statute, will uphold the legislative classifications if they bear a rational relationship to a legitimate state purpose. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16-17 [112 Cal.Rptr. 786, 520 P.2d 10]; *Weber* v. *City Council* (1973) 9 Cal.3d 950, 958-959 [109 Cal.Rptr. 553, 513 P.2d 601].)

■ Defendant argues that the statute herein affects a fundamental interest, namely its right to engage in its chosen occupation. That is sheer nonsense. The statute does not deny defendant the right to pursue its occupation; it does not restrict the range of customers defendant may solicit nor regulate the prices defendant may charge. Nor does the statute permit others in the same line of work to compete on a more favorable basis than defendant. All the statute does is grant certain of defendant's customers (those who enter into contracts at their homes) a right of rescission under certain conditions (for a period of three days if proper notice is given; for an unlimited period if it is not). ■ In any event, statutes involving occupational regulation have been subjected to strict scrutiny only when they differentiated on the basis of traditionally suspect classifications. (*D'Amico* v. *Board of Medical Examiners, supra*, 11 Cal.3d 1, 17.) Thus, in the instant case we need only determine whether there was a rational basis for including insurance adjusters within the coverage of the statute while exempting attorneys, physicians, optometrists, dentists, real estate brokers and salesmen, investment counselors and securities dealers, and certain transactions by insurance agents.

We start from the premise that in enacting regulatory legislation the Legislature is free to recognize degrees of evil and seek to eliminate only the more egregious ones or those having the greatest impact on society. (*West Coast Hotel Co.* v. *Parrish* (1937) 300 U.S. 379 [81 L.Ed. 703, 57 S.Ct. 578, 108 A.L.R. 1330].) Regulatory statutes are, after all, legislative efforts to cure social ills within the confines of political reality. Legislators do not draw lines with the precision of the scientist nor with the inspiration of the artist. Most legislative classifications are

things of shreds and patches. So long as the Legislature steers clear of the traditional suspect classes, there are no moral or logical imperatives which dictate where the lines must be drawn. Thus the argument that some members of the occupational classes exempted by section 1689.5, subdivision (d) might visit a potential client's home and engage in high pressure sales tactics is irrelevant to our deliberations. We are concerned only with whether some rational reason exists for exempting the classes as a whole. In undertaking this analysis we do not confine ourselves to the terms of the statute under review, but must judge its effect against the background of other legislative enactments and administrative directives. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 862 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].)

Since long before enactment of the statute regulating home solicitation contracts, attorneys have been subject to comprehensive standards of ethical behavior towards clients and potential clients. Adoption of the Professional Rules of Conduct and discipline for their infraction rests with the Board of Governors of the State Bar and with the California Supreme Court. (Bus. & Prof. Code, § 6076.) The Legislature may well have concluded not only that the existing regulations of attorney conduct were adequate, but that inclusion of attorneys within the purview of section 1689.5 et seq. would confuse the existing disciplinary scheme and dilute its effectiveness. Hence a rational basis exists for exempting attorneys.

Members of the healing arts, like attorneys, have long been subject to comprehensive standards of professional conduct and to discipline for infraction of those rules by a board composed predominantly of their peers. (Bus. & Prof. Code, §§ 2100, 2100.6, 2100.7, 2101, 2101.5.) Again, the Legislature may well have concluded that inclusion of health care professionals within coverage of section 1689.5 et seq. was unnecessary or that it would interfere with existing standards of conduct. Furthermore, medical treatment provided at a person's home is, typically, provided on an emergency basis. A right of rescission within three days, even if properly noticed, would make no sense in such a situation and would, in all probability, finally terminate all housecalls by physicians no matter how essential to the patient's welfare. A contract to supply health services at a future date would of course require the cooperation of the patient at a later date. The notion of a medical practitioner seeking judicial enforcement of an executory health care

contract where the "patient" has changed his mind and does not wish the work performed is too unlikely to have warranted a legislative classification drawn to accommodate it. The fact that optometrists deal in a commercial product and deal in emergencies less frequently than do doctors or even dentists means only that the Legislature was not obliged to include them in the exemption for health care professionals. Optometrists do bear sufficient similarities to other health care professionals so that their inclusion in the exemption along with physicians and dentists does not create an irrational classification.

Real estate brokers and salesmen are also comprehensively regulated and subject to discipline for a variety of professional shortcomings. (Bus. & Prof. Code, § 10175 et seq.) The regulations governing real estate brokers and salesmen are part of an all encompassing scheme governing the transfer of real property generally. Again, the Legislature may well have felt both that existing consumer protections were adequate and that the inclusion of real estate brokers and dealers within the purview of section 1689.5 et seq. would unduly disrupt the existing order in an industry in which transactions are complicated at best and time is frequently of the essence.

The insurance industry is regulated by an entire state code. The rights of an insured to rescind a contract and to receive a refund of his premium for the remaining term of the policy are provided for in that code. (Ins. Code, §§ 481, 481.5, 483.) A rational basis thus exists for the limited exemption for the sale of insurance contained in section 1689.5, subdivision (d).

Securities dealers and investment counselors are both heavily regulated by the federal government (15 U.S.C. §§ 78n et seq., 80b-1 et seq.) The Legislature placed express provisions in section 1689.5, subdivisions (a) and (d) to avoid conflicts with federal regulatory statutes. There is therefore a rational basis for the exemption of securities dealers and counselors.

Rational bases having been shown for the exemptions contained in section 1689.5, subdivision (d), the statute is not constitutionally deficient. The fact that defendant can adduce arguments for exempting

insurance adjusters[3] from the purview of the statute is not of constitutional significance. The appropriate audience for such arguments is the Legislature.

The judgment of the municipal court is hereby affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied May 12, 1980, and appellant's petition for a hearing by the Supreme Court was denied July 2, 1980.

---

[3]Insurance adjusters are also licensed and regulated by the state. They are classified for purposes of regulation along with private investigators. (Bus. & Prof. Code, §§ 7520, 7521, 7538.)