## CIRCUIT COURT OF ALBEMARLE COUNTY

Frederick H. Hantske, Jr.

v.

Brandenburger & Davis, Inc.

June 7, 1995

Case No. 9314-C

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the court on a Motion for Declaratory Judgment filed by plaintiff, Frederick H. Hantske, Jr., against the defendant, Brandenburger & Davis, Inc. Having held a hearing and taken the matter under advisement, the Court has reviewed the authority relevant to this question.

### Statement of the Case

The facts surrounding the execution of the agreement between the parties are not in dispute. On January 24, 1994, Frederick Hantske received a call at his home from Paul Kallina, an employee of the defendant. At that time, Mr. Kallina told Mr. Hantske that he was a possible heir to an estate. He requested a personal meeting with Mr. Hantske, and the two agreed to meet the following day. On January 25, 1994, the scheduled meeting took place at Mr. Hantske's home in Charlottesville, Virginia, and lasted approximately an hour and a half. Mr. Kallina explained the nature of his business more fully. His position in the corporation of Brandenburger & Davis required him to search clerks' offices in an attempt to locate heirs to estates on record. He had discovered that Mr. Hantske was likely an heir to a certain estate and informed him that Brandenburger & Davis was willing to prove Hantske's relationship to the decedent and to "fight for" Mr. Hantske's rights in the disposition of the property.

At this point in the meeting, Mr. Kallina produced a contract which laid out the terms of the agreement in question. The contract provided that

Brandenburger & Davis would receive a fee equal to one-quarter of the interest in consideration for having located Mr. Hantske, having notified him of his possible interest, and having agreed to endeavor to prove Hantske's interest in the estate. This fee was entirely contingent upon the effectuation of some recovery, so that if Brandenburger & Davis were unable to prove any share in the estate, Mr. Hantske would not be obligated to pay. Mr. Kallina stated that he thought the value of the estate was $50,000.00 and that Mr. Hantske would likely be entitled to approximately $30,000.00, concluding that if such were the case, the fee would be $7,500.00. Both Mr. Hantske and Mr. Kallina signed this agreement that same day.

Plaintiff now seeks to have the agreement voided, alleging that a right to cancellation remained with the plaintiff after the written instrument was signed.

### Question Presented

Whether the Virginia Home Solicitation Sales Act of 1970 (Code of Virginia of 1950, as amended, § 59.1-21.1, *et seq.*) applies to an agreement between the parties, entered into at the residence of the buyer, in which the seller promises to attempt to prove the buyer's interest in an inheritance and the buyer promises to pay the seller a percentage of any interest recovered?

### Discussion

The precise range and scope of the Virginia Home Solicitation Sales Act have never been affirmatively defined by Virginia courts. Therefore, in determining whether the transaction in the case at bar is covered by the statute, the Court looks to the text of the Act as well as to authority from other jurisdictions with similar statutes.

The Virginia Home Solicitation Sales Act, found at § 59.1-21.1 *et seq.* of the Code of Virginia of 1950, as amended, sets forth special requirements for sales made at any residence other than that of the seller. A "home solicitation sale" is defined at § 59.1-21.1(A) as:

> 1. A consumer sale or lease of goods or services in which the seller or a person acting for him engages (i) in a personal solicitation of sale or lease or (ii) in a solicitation of the sale or lease by telephonic or other electronic means at any residence other than that of the seller; and

2. The buyer's agreement or offer to purchase or lease is there given to the seller or a person acting for him.

Section 59.1-21.1(B) enumerates certain transactions which, although they may meet the definition of "home solicitation sale" above, are nevertheless excepted from coverage by the Act. Among these exceptions is any "sale or lease made pursuant to prior negotiations between the parties." Code of Va. § 59.1-21.2(B)(2).

### 1. *Applicability of the Home Solicitation Sales Act*

The Court finds that the agreement between Mr. Hantske and Brandenburger & Davis is a "home solicitation sale" as defined by the Act. First, the contract stated what services were being provided to the buyer, namely that the defendant would seek to establish Mr. Hantske's interest in the estate. Secondly, the contract was signed during a visit from an agent of the defendant and thus constitutes a sale by personal solicitation. Finally, the buyer's agreement to purchase was given to the seller when the written instrument was signed by Mr. Hantske and accepted by Mr. Kallina.

The Virginia Home Solicitation Sales Act is not unlike provisions in other states which seek to protect the consumer. Many states have passed such acts, which grant an unwaivable three-day right of cancellation to the buyer in a home sales transaction. Even the Federal Trade Commission has enacted rules on door-to-door sales, the violation of which constitutes an unfair and deceptive trade practice. 16 C.F.R. § 429 (1994). Such statutes and rules allow a three-day "cooling-off" period following a home sale, during which time the buyer retains an unwaivable right to cancel the transaction.

One such statute is the California Code § 1689.7. In the case of *Williams v. Kapilow & Son, Inc.*, 164 Cal. Rptr. 176 (1980), the plaintiff buyer signed a contract proffered by agents of the defendant seller which provided that the seller would negotiate the buyer's fire insurance claim against his insurer. The contract contained a contingency fee for the seller's services equal to 10% of the amount recovered. The California Court of Appeals relied on the language of the statute to find that this sort of transaction was indeed covered. *Williams*, 164 Cal. Rptr. at 178.

Similarly, the Virginia Act explicitly states that a sale of goods *or* services is covered by the act, provided the remaining elements of the definition are met. The Court interprets this text of this definition according to its plain meaning, finding that the agreement in question falls under the Act.

## 2. *Applicability of the "Prior Negotiations" Exception to the Act*

Defendant contends that the telephone conversation which occurred the day before the personal meeting constituted "prior negotiations" and therefore excepted the signed agreement from coverage by the Act pursuant to § 59.1-21.1(B)(2). The Court rejects this argument and finds that no "prior negotiations" were conducted before the agreement was entered into by the parties.

Virginia courts have not explicitly defined "prior negotiations" as it applies to the Act, but an Ohio Court of Appeals decided the issue in *Tambur's, Inc. v. Hiltner*, 379 N.E.2d 231 (1977). Considering the Ohio Home Solicitation Sales Act (O.R.C. § 1345.21 *et seq.*), a statute with a "prior negotiations" exception similar to that of the Virginia act, the court held that "negotiations" necessarily involves bargaining, including the "submission and consideration of offers." *Tambur's, Inc.*, 379 N.E.2d at 233 (citing *United States v. McShain*, 258 F.2d 422 (D.C. Cir. 1958), *cert. denied*, 358 U.S. 832).

In the action at bar, no evidence exists to support defendant's theory that "prior negotiations" occurred during the telephone conversation on January 24, 1994. Therefore, the agreement in question does not fall under the § 59.1-21.1(B)(2) exception to the definition of a "home solicitation sale."

Accordingly, the Court declares that because the signed agreement constitutes a home solicitation sale and because it does not comply with the statutory requirements of the Virginia Home Solicitation Sales Act at § 59.1-21.4, the agreement is not enforceable since it did not include a right to cancel by Mr. Hantske.