[No. S060702. Aug. 26, 1999.]

LEW WARDEN, Plaintiff and Appellant, v.
THE STATE BAR OF CALIFORNIA et al., Defendants and Respondents.

630

## COUNSEL

Lew Warden, in pro. per., for Plaintiff and Appellant.

Mark D. Greenberg as Amicus Curiae on behalf of Plaintiff and Appellant.

William H. Mellor III, Clint Bolick and Donna G. Matias for Institute for Justice as Amicus Curiae on behalf of Plaintiff and Appellant.

Stephen R. Barnett as Amicus Curiae on behalf of Plaintiff and Appellant.

Diane C. Yu, Starr Babcock, Colin P. Wong, Lawrence C. Yee, Robert M. Sweet, Marie Moffat; Cooper, White & Cooper, James M. Wagstaffe, Mark L. Tuft and Andrew I. Dilworth for Defendants and Respondents.

Law Offices of Amitai Schwartz, Amitai Schwartz; Freidman, Ross & Hersh, Jeffrey S. Ross; Joel D. Schiff; Altshuler, Berzon, Nussbaum, Berzon & Rubin, Fred H. Altshuler; Littler Mendelson and Richard J. Loftus, Jr., for the Bar Association of San Francisco, Santa Clara County Bar Association and Beverly Hills Bar Association as Amici Curiae on behalf of Defendants and Respondents.

Blanc Williams Johnston & Kronstadt, John A. Kronstadt; Sidley & Austin and Catherine Valerio Barrad for Los Angeles County Bar Association, San Diego County Bar Association, San Fernando Valley Bar Association, Orange County Bar Association, Sacramento Bar Association and Women Lawyers Association of Los Angeles as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**GEORGE, C. J.**—In this proceeding, plaintiff Lew Warden, an attorney and member of the State Bar of California (State Bar or Bar), challenges the constitutional validity of this state's mandatory (or minimum) continuing legal education (MCLE) program, established pursuant to statute and court rule and administered by the State Bar. Among other claims, plaintiff contends that the current MCLE program violates his right to the equal protection of the laws, because a number of categories of currently licensed attorneys—retired judges, officers and elected officials of the State of California, and full-time law professors at accredited law schools—are exempt from the MCLE requirements.

The trial court rejected plaintiff's constitutional claims and granted summary judgment in favor of defendants (the State Bar and a number of its employees). On appeal, the Court of Appeal reversed the judgment, concluding that the challenged exemptions from the MCLE program are arbitrary and irrational and thus invalid even under the "rational relationship" equal protection standard that the Court of Appeal found applicable in this setting. Further, the majority opinion in the Court of Appeal, expressing the view of two justices, went on to conclude that the proper remedy for the equal protection violation it had found was the invalidation of the MCLE program in its entirety. The third Court of Appeal justice, while agreeing with the majority that the exemptions were constitutionally flawed, concluded that the appropriate remedy for the equal protection violation was to eliminate only the invalidated exemptions, thereby preserving the MCLE program and extending its requirements to the formerly exempt categories of attorneys as well as to all nonexempt attorneys.

We granted the State Bar's petition for review to consider whether (1) the MCLE program violates federal or state equal protection principles by exempting the specified categories of attorneys from the MCLE requirements, and (2) if so, what the appropriate remedy should be.

As explained hereafter, we conclude that, although the wisdom of some or all of the exemptions from the MCLE program may be questioned as a matter of policy, the challenged exemptions may not be found unconstitutional under a proper understanding of the applicable equal protection standard as established by the governing decisions of both the United States Supreme Court and this court. In light of this determination, there is no need to reach the question of the appropriate remedy were the exemptions to be unconstitutional.

I

 The MCLE program in California—a consumer protection measure "intended to enhance the competency of attorneys practicing law in this state" (*People* v. *Ngo* (1996) 14 Cal.4th 30, 36 [57 Cal.Rptr.2d 456, 924 P.2d 97])—is a product of legislative action, court rule, and State Bar regulations.[1] In 1989, the Legislature enacted Business and Professions Code section 6070, which required the State Bar to request this court to adopt a rule of court authorizing the Bar to establish and administer an MCLE program. (Bus. & Prof. Code, § 6070, subd. (a).)[2] The statute specified a number of details concerning the rule that the State Bar was to request, including a provision that a member of the Bar who failed to satisfy the MCLE requirements would be enrolled as an inactive member and thus be unauthorized to practice law in this state until these requirements were met. (*Ibid.*)

Section 6070 also includes a separate subdivision—subdivision (c)—that exempts certain categories of attorneys from the reach of the statute, providing that "retired judges, officers and elected officials of the State of California, . . . full-time professors at law schools accredited by the State Bar of California, the American Bar Association, or both, [and] . . . [f]ull-time

---

[1] At the time the California MCLE program was adopted in December 1990, 35 states already had adopted MCLE programs. Since 1990, four more states, in addition to California, have adopted MCLE programs. (See N.Y. State Bar Assn., Comparison of the Features of Mandatory Continuing Legal Education Rules in Effect as of July 1998 (1998) pp. 4-8 (hereafter Comparison of MCLE Rules as of July 1998); N.Y. Comp. Codes R. & Regs., tit. 22, § 1500, Mandatory Continuing Legal Education Program for Attorneys in New York.) New York is the most recent state to have adopted an MCLE program, effective December 31, 1998. (See Pfau, *CLE for New York Attorneys: Ensuring the Tradition of Professionalism* (Jan. 1999) 71 N.Y. St. B.J. 8.) In most states, MCLE has been established through a rule adopted by the state supreme court. (See Comparison of MCLE Rules as of July 1998, *supra*, at pp. 4-8.)

[2] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

employees of the State of California, acting within the scope of their employment, shall be exempt from the provisions of this section."[3]

Following the passage of section 6070, the State Bar requested this court to adopt an MCLE rule. After considering public comment, this court adopted rule 958 of the California Rules of Court, effective December 6, 1990. That rule requires the State Bar to establish and administer an MCLE program, beginning January 1, 1991, "under rules adopted by the Board of Governors of the State Bar." Rule 958, like section 6070, specifies a number of details relating to the MCLE program, and exempts some attorneys from the MCLE requirements. Under rule 958, (1) attorneys exempt under section 6070, (2) full-time federal employees, acting within the scope of their employment, and (3) attorneys "exempt under rules adopted by the Board of Governors of the State Bar" are not subject to the MCLE requirements mandated by the rule.[4]

---

[3]Section 6070 provides in full: "(a) The State Bar shall request the California Supreme Court to adopt a rule of court authorizing the State Bar to establish and administer a mandatory continuing legal education program. The rule that the State Bar requests the Supreme Court to adopt shall require that, within designated 36-month periods, all active members of the State Bar shall complete at least 36 hours of legal education activities approved by the State Bar or offered by a State Bar approved provider, with eight of those hours in legal ethics or law practice management, four hours of which shall be legal ethics. If the California Supreme Court adopts a rule authorizing the State Bar to establish and administer the program, the State Bar shall establish and administer a mandatory continuing legal education program commencing on or after January 1, 1991. A member of the State Bar who fails to satisfy the mandatory continuing legal education requirements of the program authorized by the Supreme Court rule shall be enrolled as an inactive member pursuant to rules adopted by the Board of Governors of the State Bar.

"(b) For purposes of this section, statewide associations of public agencies and incorporated, nonprofit professional associations of attorneys, shall be certified as State Bar approved providers upon completion of an appropriate application process to be established by the State Bar. The certification may be revoked only by majority vote of the board, after notice and hearing, and for good cause shown. Programs provided by the California District Attorneys Association or the California Public Defenders Association, or both, including, but not limited to, programs provided pursuant to Title 1.5 (commencing with Section 11500) of Part 4 of the Penal Code, are deemed to be legal education activities approved by the State Bar or offered by a State Bar approved provider.

"(c) Notwithstanding the provisions of subdivision (a), retired judges, officers and elected officials of the State of California, and full-time professors at law schools accredited by the State Bar of California, the American Bar Association, or both, shall be exempt from the provisions of this section. Full-time employees of the State of California, acting within the scope of their employment, shall be exempt from the provisions of this section. Nothing in this section shall prohibit the State of California, or any political subdivision thereof, from establishing or maintaining its own continuing education requirements for its employees."

[4]Rule 958 of the California Rules of Court currently provides in full:

"(a) This rule is adopted under section 6070 of the Business and Professions Code.

"(b) The State Bar shall establish and administer a minimum continuing legal education program, beginning on or after January 1, 1991, under rules adopted by the Board of Governors of the State Bar. These rules may provide for carry[ing] forward of excess credit

Contemporaneously with the adoption of California Rules of Court, rule 958, the Board of Governors of the State Bar adopted a detailed set of rules and regulations to govern the operation of the MCLE program. (See State Bar Min. Cont. Legal Ed. Rules & Regs., §§ 1.0-17.0, adopted by the Bd. of Governors of the State Bar on Dec. 8, 1990, and amended Sept. 1, 1995 (hereafter State Bar MCLE Rules and Regulations).) The regulations set out the five prescribed categories exempted from the MCLE requirements pursuant to section 6070 and rule 958—(1) retired judges, (2) officers and elected officials of the State of California, (3) full-time professors at accredited law schools, (4) full-time employees of the State of California, and (5) full-time federal employees—and provide that the last two categories refer to public employees "who do not practice law in California except as employees of the State of California . . . [or] of the United States Government . . . ." (State Bar MCLE Rules & Regs., §§ 6.1.4, 6.1.5.) In addition, the regulations include a provision—entitled "Good Cause Exemption From or Modification of Requirement"—that authorizes any member of the State Bar to "submit an application setting forth good cause for an exemption from compliance with or modification of any of the [MCLE] requirements, including an extension of time for compliance, in accordance with a procedure to be established by the Committee on Minimum Continuing Legal Education." (State Bar MCLE Rules & Regs., § 6.3.)[5]

---

hours, staggering of the education requirement for implementation purposes, and retroactive credit for legal education approved by the State Bar or offered by a State Bar approved provider completed prior to the effective date of the program.

"(c) Each active member of the State Bar (1) not exempt under Business and Profession Code section 6070, (2) not a full-time employee of the United States Government, its departments, agencies, and public corporations, acting within the scope of his or her employment, and (3) not otherwise exempt under rules adopted by the Board of Governors of the State Bar, shall, within 36-month periods designated by the State Bar, complete at least 36 hours of legal education approved by the State Bar or offered by a State Bar-approved provider. Eight of those hours shall address legal ethics or law practice management. One of the eight hours may, instead, be satisfied by legal education in the civil and criminal remedies available for civil rights violations. However, members shall complete no less than four of the eight hours in legal ethics. Members may be required to complete legal education in other specified areas within the 36-hour requirement under rules adopted by the State Bar. Each active member shall report his or her compliance to the State Bar under rules adopted by the Board of Governors of the State Bar.

"(d) A member of the State Bar who fails to satisfy the requirements of the State Bar's minimum continuing legal education program shall be enrolled as an inactive member of the State Bar under rules adopted by the Board of Governors of the State Bar.

"(e) The State Bar shall have the authority to set and collect appropriate fees and penalties."

[5]Following the State Bar's adoption of the MCLE Rules and Regulations, the State Bar of California's Committee on Minimum Continuing Legal Education adopted a set of guidelines as "advisory interpretations" of the MCLE Rules and Regulations. (See Guidelines: MCLE Rules & Regs. (MCLE Guidelines).)

· The MCLE Guidelines elaborate on a number of the exemptions. Under the guidelines, a retired judge, for purposes of the MCLE exemption, is one who has served as a judge of a

## II

Under the provisions of rule 958, California Rules of Court, plaintiff, an actively enrolled member of the State Bar, was obligated to comply with the MCLE program. He acknowledges, however, that he did not do so. On April 23, 1993, the Bar, pursuant to its regulations (State Bar MCLE Rules & Regs., § 13.2), sent plaintiff a "Non-Compliance Notice," advising plaintiff of what he was required to do to comply with the MCLE requirements and informing him that he had 60 days from the date of the notification to comply with the requirements; the notice informed plaintiff that he would be enrolled as an inactive member if he did not submit proof of compliance by June 22, 1993. On June 29, the Bar sent plaintiff a final notice, advising him that his name would be submitted to the Board of Governors on July 17, 1993, with a recommendation that, effective July 19, 1993, he be enrolled as an inactive member of the Bar until he complied with the MCLE requirements.

On July 9, 1993, plaintiff wrote to the MCLE compliance coordinator of the State Bar, asserting that the MCLE program was unconstitutional and that he could not be prohibited from practicing law for refusing to comply with its requirements. On July 23, a senior administrative assistant of the Bar's legal unit acknowledged receipt of plaintiff's letter, which had been forwarded by the Bar's Office of General Counsel for response. On July 30, the Bar sent plaintiff a notice of enrollment on administrative inactive status, informing him that effective July 19, 1993, he was ineligible to practice law in California until the Bar received proof of his compliance with the applicable MCLE requirements.

---

court of record in California or another jurisdiction, has retired from the bench, and is either immediately qualified to receive retirement or pension benefits or is vested in such benefits and is entitled to receive them in the future. (MCLE Guidelines, § 6.1.1.) A law professor, for purposes of the MCLE exemption, is a full-time teacher at an accredited law school, regardless of the academic title given by the law school. (*Id.*, § 6.1.3.)

With respect to the exemption for attorneys who are full-time state or federal employees, the MCLE Guidelines provide that such attorneys are exempt from the MCLE requirements "only if the *sole* legal work done by the attorneys is within the scope of their employment. If these attorneys engage in any legal activity outside the scope of their employment, including pro bono work or legal work for the attorney personally, close friends or immediate family, the attorney is not covered by the exemptions . . . and must comply with the full MCLE requirements." (MCLE Guidelines, §§ 6.1.4, 6.1.5, original italics.) More recently, the treatment of pro bono activities by such attorneys has been modified by the adoption of section 6.1.6 of the State Bar MCLE Rules & Regulations, which provides that "[e]ffective February 1, 1997, members otherwise exempt from the continuing legal education requirements pursuant to sections 6.1.4 and 6.1.5 [i.e., full-time state and federal employees] may provide pro bono legal services through a qualified legal services project or support center . . . provided that the sponsor of the pro bono project or support center ensures that members volunteering pursuant to this section have received the necessary training or otherwise possess the necessary skills to provide quality service and maintain professional standards."

On September 23, 1993, plaintiff responded to the notice that he had been enrolled as an inactive member by a letter to the State Bar, expressing his "profound disagreement" with the MCLE program and threatening to sue the Bar and its employees for damages if it did not "forthwith recall [its] suspension order." On October 7, 1993, plaintiff filed with the State Bar a "Claim of Damage," in which he asserted that, as a result of its enrollment of him as an inactive member for noncompliance with the MCLE requirements, the State Bar was liable to him in the amount of $6,000 per month for lost income and an unspecified amount for "emotional distress." On October 27, the Bar's Assistant General Counsel responded to plaintiff's correspondence in a letter that explained the manner in which the MCLE program had been developed and that indicated that plaintiff's October 7 claim of damage had been forwarded to the Board of Governors for review.

After the Board of Governors denied his claim for damages, plaintiff filed the complaint in the present action, naming the State Bar and various employees as defendants, and seeking compensatory and punitive damages, declaratory relief, an injunction, and a writ of mandate. In his complaint, plaintiff maintained that the MCLE program was unconstitutional in numerous respects, asserting that the program denied him procedural and substantive due process of law and equal protection of the laws. Among other claims, plaintiff contended that the MCLE program violated his right to equal protection by exempting certain categories of attorneys from its requirements.

The State Bar moved for summary judgment or, in the alternative, for summary adjudication of issues. (Code Civ. Proc., § 437c.) After a hearing, the trial court granted summary adjudication in favor of the Bar on all issues submitted by the Bar, thus effectively disposing of all aspects of plaintiff's constitutional challenge. Plaintiff filed a motion for reconsideration, and, after the court filed a formal order granting summary judgment in favor of defendants, plaintiff filed a motion for new trial. The trial court denied both motions, and plaintiff appealed.

In resolving the appeal, the Court of Appeal focused almost entirely on plaintiff's equal protection claim, and in particular the claim that the MCLE program denied plaintiff equal protection of the laws because the program unjustifiably exempted certain categories of attorneys from the MCLE requirements that applied to plaintiff and all other nonexempt attorneys. After concluding that plaintiff had standing to raise this claim, the Court of Appeal first rejected plaintiff's contention that his equal protection challenge to the classifications drawn by the MCLE program properly should be evaluated under the "strict judicial scrutiny" test, and instead agreed with the State

Bar's position that the ordinary "rational basis" standard of review is applicable in this context. Nonetheless, the Court of Appeal ultimately concluded that whereas the exemptions for full-time state and federal employees who do not represent individual clients satisfy the rational relationship test, the exemptions for (1) retired judges, (2) officers and elected officials of the State of California, and (3) full-time professors at accredited law schools do not. Observing that "[t]he fact that a lawyer wins an election or is appointed to a state office does not mean that the lawyer is necessarily current in recent legal developments, well versed in legal ethics, or an expert in law office management," and that "[i]f a state officer or elected official, a retired judge, or a law professor represents individual clients in private practice, the same legitimate interests of the public protection of such clients apply," the Court of Appeal concluded that no rational basis exists for these three exemptions.

As noted above, although all three Court of Appeal justices agreed that the three identified exemptions could not be sustained under the "rational relationship" equal protection standard, the justices parted company on the question of the appropriate remedy for the equal protection violation they had identified. Two justices, explaining that they could not find with confidence that the Legislature would have adopted section 6070 without the challenged exemptions, concluded that the appropriate remedy was to invalidate the MCLE program as a whole, leaving the Legislature "to start anew and initiate comprehensive legislative reform of [M]CLE, rather than to accept a judicial reformation of section 6070 mandatorily expanding the burden of [M]CLE training to those the Legislature specifically exempted therefrom." The remaining justice, dissenting from this aspect of the majority opinion, concluded that there was no need to "throw[] the baby out with the proverbial bathwater" and suggested that the better and more appropriate solution was to excise the offending exemptions (which the justice observed apparently applied to only a few hundred attorneys) rather than to invalidate the MCLE program as a whole.

 ██ ██ Both plaintiff and the State Bar filed separate petitions for review in this court. We granted only the State Bar's petition for review, which presented two principal issues: (1) whether the Court of Appeal properly found that the exemptions for retired judges, state officers and elected officials, and full-time professors at accredited law schools denied plaintiff the equal protection of the laws, and (2) if so, whether the Court of Appeal correctly concluded that the appropriate remedy is to invalidate the

MCLE program as a whole, rather than to extend the MCLE requirements to the previously exempted attorneys.[6]

## III

We begin with the question whether the state's exemption of (1) retired judges, (2) officers and elected officials of the State of California, and (3) full-time professors at accredited law schools from a generally applicable MCLE program denies plaintiff the equal protection of the laws. ■ As we shall explain, we agree with the Court of Appeal that the applicable equal protection standard of review in this context is the "rational relationship," rather than the "strict scrutiny," standard, but we further conclude that the Court of Appeal erred in determining that the exemptions in question can be found unconstitutional under a proper understanding and application of the rational relationship standard.

## A

■ In *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], we described the two principal standards or tests that generally have been applied by the courts of this state and the

---

[6]As noted, the Court of Appeal did not find that the exemptions for full-time state or federal attorneys denied plaintiff equal protection of the laws. That court also rejected plaintiff's claims that his rights were violated by the State Bar's reliance upon his last name (whose alphabetical order governed the onset of his initial period for MCLE compliance) and by application of the MCLE requirements to a person of his advanced age, rejecting as well his contention that the Bar and its employees may be sued for damages. We denied plaintiff's petition for review, and we see no reason to disturb the Court of Appeal's conclusion on these issues.

Although the Court of Appeal declined to address plaintiff's substantive or procedural due process challenges to the MCLE program, we conclude that these claims clearly lack merit and that the trial court properly rejected them. (See *Verner* v. *State of Colo.* (10th Cir. 1983) 716 F.2d 1352, 1353, cert. den. 466 U.S. 690 [104 S.Ct. 2175, 80 L.Ed.2d 558] ["[A] state can require an attorney to take reasonable steps to maintain a suitable level of competency, so long as such requirements have a 'rational connection with the [attorney's] fitness or capacity to practice law.' [Citations.] We cannot say that the CLE requirements in Colorado have no rational connection to a lawyer's suitability to practice law."]; *Matter of Smith* (1997) 189 Ariz. 144 [939 P.2d 422, 424] [upholding Arizona's MCLE requirements].) Because plaintiff was provided notice of his noncompliance with the existing MCLE requirements, and did not claim that he had complied with, or was exempt from, those requirements, there were no factual questions to be resolved by a hearing, and under such circumstances the State Bar's nondiscretionary ministerial action of placing plaintiff on inactive status without a hearing did not deny him procedural due process. (See, e.g., *Matter of Smith, supra*, 939 P.2d 422, 424; *Codd* v. *Velger* (1977) 429 U.S. 624, 627-628 [97 S.Ct. 882, 51 L.Ed.2d 92]; *DiGenova* v. *State Board of Education* (1955) 45 Cal.2d 255, 259-263 [288 P.2d 862]; cf. *Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1112-1118 [278 Cal.Rptr. 346, 805 P.2d 300]; see generally, 2 Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure (2d ed. 1992) § 17.8, pp. 645-646.)

United States Supreme Court in reviewing classifications that are challenged under the equal protection clause of the Fourteenth Amendment of the United States Constitution or article I, section 7, of the California Constitution. As the court in *D'Amico* explained: "The first is the basic and conventional standard for reviewing economic and social welfare legislation in which there is a 'discrimination' or differentiation of treatment between classes or individuals. It manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests legislation involving such differentiated treatment with a presumption of constitutionality and 'requir[es] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.' [Citation.] . . . Moreover, the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it.*" (11 Cal.3d at pp. 16-17, italics in original.)

The court in *D'Amico* further explained that "[a] more stringent test is applied . . . in cases involving 'suspect classifications' or touching on 'fundamental interests.' Here the courts adopt 'an attitude of active and critical analysis, subjecting the classifications to strict scrutiny. [Citations.] Under the strict standard applied in such cases, *the state* bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose.' [Citation.]" (11 Cal.3d at p. 17.)[7]

In arguing that heightened "strict scrutiny," as contrasted with the ordinary "rational relationship" standard, should be applied in determining whether the exemptions within the MCLE program violate the equal protection guarantee, plaintiff relies primarily on a series of decisions of the United States Supreme Court and this court that describe the right to "engage in any of the common occupations of life" as a "fundamental" right or liberty for purposes of the due process clauses of the federal and state Constitutions. (E.g., *Meyer* v. *Nebraska* (1923) 262 U.S. 390, 399 [43 S.Ct. 625, 626, 67

---

[7]Since the 1974 decision in *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1, the United States Supreme Court has adopted an "intermediate" standard of review that it has applied in cases involving classifications that discriminate on the basis of gender or illegitimacy. (See, e.g., *Craig* v. *Boren* (1976) 429 U.S. 190, 197 [97 S.Ct. 451, 451, 50 L.Ed.2d 397] ["To withstand constitutional challenge, . . . classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."]; *Clark* v. *Jeter* (1988) 486 U.S. 456, 461 [108 S.Ct. 1910, 1914, 100 L.Ed.2d 465] ["Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy."]; see generally, 3 Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure, *supra,* § 18.3, pp. 16-19.) In the present proceeding, no party has argued that this intermediate standard of review is applicable, and there is no authority that would support its application in this context.

L.Ed. 1042, 29 A.L.R. 1446]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 75 [64 Cal.Rptr. 785, 435 P.2d 553]; *Conway* v. *State Bar* (1989) 47 Cal.3d 1107, 1113 [255 Cal.Rptr. 390, 767 P.2d 657, 80 A.L.R.4th 101].) Plaintiff reasons from these decisions that legislation or court rules that draw distinctions or create classifications relating to the practice of law impinge upon a "fundamental right" for equal protection purposes and are therefore subject to strict scrutiny.

In *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70 [177 Cal.Rptr. 566, 634 P.2d 917], we explained the fallacy in this reasoning in addressing a somewhat related contention. As we noted in *Hernandez*: "Plaintiff's reliance on this line of procedural due process cases appears to rest upon an assumption that whenever a 'property' or 'liberty' interest is accorded the protections of procedural due process, that interest becomes a 'fundamental constitutional right' so that legislative measures regulating such an interest are necessarily subject to strict scrutiny. This assumption is totally unfounded. Recent decisions have established that the whole panoply of ordinary property rights are generally protected from summary termination or deprivation by procedural due process [citations] but no case has even remotely suggested that the constitutionality of substantive legislative measures regulating or restricting such 'protected property' rights are to be judged under a 'strict scrutiny standard.' " (30 Cal.3d at p. 81, fn. omitted; see also *Hughes* v. *Board of Architectural Examiners* (1998) 17 Cal.4th 763, 789 [72 Cal.Rptr.2d 624, 952 P.2d 641].)

In *Bib'le* v. *Committee of Bar Examiners* (1980) 26 Cal.3d 548 [162 Cal.Rptr. 426, 606 P.2d 733], addressing an equal protection challenge to a State Bar rule that accorded differential treatment to Bar applicants on the basis of whether they attended accredited or unaccredited law schools, we rejected the plaintiff's contention that the challenged classification "must be subject to strict scrutiny and supported by a compelling state interest." (26 Cal.3d at p. 554.) We explained: "This court has articulated the appropriate test in examining claims of discrimination in occupational and professional licensing. 'The conventional "rational relationship" test is traditionally applied in cases involving occupational licensing . . . .' [Citation.] . . . Accordingly, the rules here under attack have a presumption of constitutionality and require only that the distinctions drawn bear some rational relationship to a conceivable legitimate state purpose. [Citations.]" (*Id.* at p. 555.)

Plaintiff claims that the holding in *Bib'le* on this point should not be applied to the classifications here at issue, because the classifications in *Bib'le* affected only persons who were not yet members of the Bar, whereas the classifications challenged in the present case apply to individuals who

already have been admitted to the Bar. But past authorities make it clear that the rational relationship standard applies to classifications involving those persons who already have obtained professional or occupational licenses, as well as to those applying for such licenses. (See, e.g., *Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483, 488-489 [75 S.Ct. 461, 464-465, 99 L.Ed. 563]; *Semler* v. *Dental Examiners* (1935) 294 U.S. 608, 610-611 [55 S.Ct. 570, 571-572, 79 L.Ed. 1086]; *Ramirez* v. *Oregon State Bar* (9th Cir. 1989) 887 F.2d 1089; *Wachs* v. *Curry* (1993) 13 Cal.App.4th 616, 624 [16 Cal.Rptr.2d 496].)[8]

Thus, we agree with the Court of Appeal that plaintiff's equal protection challenge to the exemptions to the MCLE program properly must be evaluated under the traditional "rational relationship" standard. (See also *Verner* v. *State of Colo.* (D.Colo. 1982) 533 F.Supp. 1109, 1118, affd. (10th Cir. 1983) 716 F.2d 1352 [applying rational relationship standard in determining validity of exemption from state MCLE program].)[9]

---

[8]As this court noted in *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1, 17, there are some cases involving equal protection challenges to occupational or professional regulations in which more stringent scrutiny has been employed, but those cases "invariably involved a classification drawn along lines which rendered it 'suspect' in constitutional terms." (See, e.g., *Raffaelli* v. *Committee of Bar Examiners* (1972) 7 Cal.3d 288, 291-294 [101 Cal.Rptr. 896, 496 P.2d 1264, 53 A.L.R.3d 1149] [discrimination based on alienage]; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16-20 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351] [discrimination based on gender]; *Supreme Court of New Hampshire* v. *Piper* (1985) 470 U.S. 274, 284-288 [105 S.Ct. 1272, 1278-1281, 84 L.Ed.2d 205] [discrimination against nonresident].)

[9]Although he did not raise the point below, in this court plaintiff argues that because this court possesses "plenary authority" to regulate the practice of law (see generally, *In re Attorney Discipline System* (1998) 19 Cal.4th 582, 592-593 [79 Cal.Rptr.2d 836, 967 P.2d 49]), we may "strictly scrutinize" the challenged exemptions and invalidate them if the court finds that they improperly discriminate against plaintiff and other California attorneys.

Constitutional guarantees protect an individual from impermissible discrimination by the state, whether the state acts through legislative action or court rule (see, e.g., *Ex parte Virginia* (1880) 100 U.S. 339, 346-347 [25 L.Ed. 676, 679-680]; *Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350 [97 S.Ct. 2691, 53 L.Ed.2d 810]; *Supreme Court of New Hampshire* v. *Piper, supra,* 470 U.S. 274), and plaintiff cites no authority suggesting that the rational relationship equal protection standard does not apply to the determination of the constitutionality of classifications in an MCLE program that are established by a judicial rule, as well as to classifications that are embodied in a legislative enactment. (See *Verner* v. *State of Colo., supra,* 533 F.Supp. 1109, 1118 [applying rational relationship standard in evaluating equal protection challenge to MCLE requirements imposed by court rule]; see also *Adams* v. *Commission on Judicial Performance* (1994) 8 Cal.4th 630, 658-661 [34 Cal.Rptr.2d 641, 882 P.2d 358] [applying rational basis standard in reviewing equal protection challenge to judicially promulgated rule]; *Knight* v. *Tape, Inc.* (3d Cir. 1991) 935 F.2d 617, 627-630 [same].) Although Justice Kennard's dissenting opinion (*post,* at p. 653) suggests that *Frazier* v. *Heebe* (1987) 482 U.S. 641 [107 S.Ct. 2607, 96 L.Ed.2d 557] supports some form of "heightened scrutiny" when an equal protection challenge is to a court rule, in that case the United States Supreme Court decided the matter pursuant to its supervisory authority, rather

B

■ As noted, although we agree with the Court of Appeal's conclusion that the rational relationship standard applies here, we disagree with the appellate court's further conclusion that, under this standard, the exemptions to the MCLE program at issue are unconstitutional. As we shall explain, we believe the determination reached by the Court of Appeal rests upon a misapplication of the rational relationship standard.

■ As both the United States Supreme Court and this court have explained on many occasions, "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.* [Citations.] Where there are 'plausible reasons' for [the classification] 'our inquiry is at an end.' " (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [113 S.Ct. 2096, 2101, 124 L.Ed.2d 211], italics added, quoting *U. S. Railroad Retirement Bd. v. Fritz* (1980) 449 U.S. 166, 179 [101 S.Ct. 453, 461-462, 66 L.Ed.2d 368]; see, e.g., *Central State Univ.* v. *American Assn. of Univ. Professors, Central State Univ. Chapter* (1999) 526 U.S. 124, 126-127 [119 S.Ct. 1162, 1163, 143 L.Ed.2d 227]; *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 130-132 [216 P.2d 825, 13 A.L.R.2d 252].) Past decisions also establish that, under the rational relationship test, the state may recognize that different categories or classes of persons within a larger classification may pose varying degrees of risk of harm, and properly may limit a regulation to those classes of persons as to whom the need for regulation is thought to be more crucial or imperative. (See, e.g., *American Bank & Trust Co.* v. *Community*

than on constitutional grounds (see *id.* at p. 645 [107 S.Ct. at p. 2611]), and, moreover, the rule at issue in *Frazier* discriminated against out-of-state attorneys, a classification that traditionally has been viewed as constitutionally suspect. (See *Supreme Court of New Hampshire* v. *Piper, supra,* 470 U.S. 274.) In any event, as the text of rule 958 itself indicates, the exemptions at issue in this case were adopted in deference to the legislative policy judgments embodied in the Legislature's enactment of section 6070, and thus we believe it is clearly appropriate to apply the traditional rational relationship standard here.

To the extent plaintiff's reference to this court's "plenary authority" constitutes a request that we invoke our inherent quasi-legislative authority to amend or modify the provisions of rule 958, California Rules of Court, the present proceeding is not the appropriate avenue for pursuing such a request. In the complaint on which this action is based, plaintiff did not simply seek a change in the MCLE program for the future, but rather claimed that the existing requirements are invalid and, as a consequence, that the State Bar lacked authority to place him on inactive status for failing to comply with the existing requirements. The current proceeding thus concerns the *validity* of the MCLE program that resulted in defendant's placement on inactive status, and not whether, *as a matter of policy,* the existing exemptions should be retained or modified. In determining the validity of the challenged exemptions under the equal protection clause, we apply the rational relationship standard.

*Hospital* (1984) 36 Cal.3d 359, 371 [204 Cal.Rptr. 671, 683 .P.2d 670, 41 A.L.R.4th 233]; *Williamson* v. *Lee Optical Co., supra,* 348 U.S. 483, 489 [75 S.Ct. 461, 465] ["Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. [Citation.] Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind."].) As the United States Supreme Court has observed: "Defining the class of persons subject to a regulatory requirement . . . 'inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial consideration.' " (*FCC* v. *Beach Communications, Inc., supra,* 508 U.S. 307, 315-316 [113 S.Ct. 2096, 2101.)

In this case, the constitutional question is whether an MCLE program that generally requires attorneys licensed by the state to complete a specified number of continuing education courses violates the federal or state equal protection clause by exempting retired judges, state officers and elected officials, and full-time professors at accredited law schools from the reach of the continuing education requirement. Although it may be that the wisdom of some or all of these exemptions is debatable *as a matter of policy,*[10] we conclude that the Court of Appeal erred in finding that these three exemptions fail the traditional rational relationship test that applies in this context, because we do not believe it fairly can be said that there is no "reasonably conceivable state of facts that could provide a rational basis for the classification." (*FCC* v. *Beach Communications, Inc., supra,* 508 U.S. 307, 313 [113 S.Ct. 2096, 2101].)

As we shall explain, there are at least two "plausible reasons" that rationally support each of the exemptions in question. First, it would not

---

[10]The American Bar Association's commentary to its Model Rule for Minimum Continuing Legal Education recommends against the adoption of *any* exemptions to an MCLE program. (ABA Center for Legal Ed., Model Rule for Min. Continuing Legal Ed. (rev. 1996) com. to § 5.) Nonetheless, the great majority of the 40 states that have adopted an MCLE program have exempted some categories of attorneys from their MCLE requirements. (See generally, Comparison of MCLE Rules as of July 1998, *supra,* at pp. 9-17.)

The most common exemption appears to be for attorneys over a specified age (usually 65 or 70), but several of the categories whose exemption is at issue in this case—elected officials and legislators, and full-time law professors—also have been exempted from MCLE requirements in a number of other states. (See Comparison of MCLE Rules as of July 1998, *supra,* at pp. 9-17 [Delaware (elected officials); Georgia (elected officials); Montana (legislators); North Carolina (full-time law faculty); Oklahoma (legislators); Texas (full-time law faculty, except ethics requirement); Washington (legislators)].) Many states also exempt judges from their MCLE requirements (*ibid.*), but it is not clear whether this exemption in other states applies to retired judges.

have been irrational to conclude that the attorneys in each of the exempted categories, *as a general matter*, are less likely than other attorneys to represent clients on a full-time basis, thus rendering the need for a continuing education requirement less vital, as a matter of consumer protection, for these classes than for other attorneys. Second, it would not have been irrational to conclude that, in view of their particular professional roles and experience, the attorneys in each of the exempt classes (again, *as a general matter*) are less likely than lawyers in general to need continuing education courses in order to be familiar with recent legal developments or to remain competent practitioners.

Thus, with respect to the category of retired judges, it would not be irrational to conclude that such individuals, as a class, are less likely than other attorneys to represent clients on a full-time basis after their retirement from the bench, both because, after retirement, such judges may be likely to scale back the overall time spent on legal work, and because, when they do engage in professional endeavors, they are more likely to serve as assigned judges, mediators, or arbitrators (or in similar roles) than to represent individual clients. Furthermore, because of the high level of legal skills and qualifications that generally are required to obtain a position as a judge, and because the daily work of a judge involves constant exposure to and analysis of ongoing developments in the law, it would not be irrational to conclude that it is less necessary, for the protection of the public, to extend the MCLE requirement to this small category of attorneys than to other attorneys.

Similarly, with respect to the category of officers and elected officials of the State of California, it would not be irrational to conclude that because of the considerable amount of time required for the performance of their public duties, such individuals, as a class, are less likely than attorneys as a whole to represent clients on a full-time basis, and that when such individuals do represent clients in the limited time available, they are likely to do so in areas in which they have some particular current expertise or familiarity. Furthermore, because the work of legislators and state officers is devoted, in substantial part, to the review of the current state of the law and the consideration of proposals to modify the law, or to the implementation of recent changes in the law, it would not be irrational to conclude that this group of attorneys, as a whole, may be less in need of MCLE courses than other attorneys, in order to remain abreast of recent developments in the law.

Finally, with respect to the category of full-time professors at accredited law schools, it again would not be irrational to conclude that because of the amount of time such professors devote to their teaching and other academic pursuits, this category of attorneys is less likely than attorneys as a whole to

represent clients on a full-time basis, and, when they do represent clients, less likely that they will engage in legal work outside their area of particular expertise. Moreover, because of the outstanding academic qualifications generally required to obtain a position as a full-time professor at an accredited law school, because the work of a full-time law professor requires the intensive study, analysis, and teaching of the current state of the law, and because full-time professors at accredited law schools function in an academic setting in which lectures, publications, and frequent faculty discussions typically encompass recent developments in all areas of the law, here too it would not be irrational to conclude that it is less necessary, for the protection of the public, to extend the MCLE requirements to this category of attorneys than to other attorneys.

We emphasize that in assessing the rationality of each of the exemptions in question, we appropriately must evaluate the classifications as a whole. Although some individuals within each of these classes may be as much in need of MCLE courses as other attorneys, in view of the wide berth the state traditionally is given when a suspect classification or fundamental right is not at issue, the exemptions in question cannot properly be found to be irrational or arbitrary under the traditional, deferential, rational relationship standard. (See, e.g., *Williams* v. *Kapilow & Sons, Inc.* (1980) 105 Cal.App.3d 156, 162-163 [164 Cal.Rptr. 176].)[11]

In reaching a contrary conclusion, the Court of Appeal relied in part upon language from this court's opinion in *Cooper* v. *Bray* (1978) 21 Cal.3d 841 [148 Cal.Rptr. 148, 582 P.2d 604], a decision that struck down, on equal protection grounds, a statutory provision that barred a passenger/owner of an automobile from recovering personal injury damages against the driver of the vehicle unless the passenger/owner established that the injury proximately resulted from the intoxication or willful misconduct of the driver. In the course of the decision in *Cooper*, the court stated that, in applying what it referred to as the " 'restrained' equal protection standard of review" (21 Cal.3d at p. 847), a court is required " 'to conduct "*a serious and genuine judicial inquiry* into the correspondence between the classification and the legislative goals." ' " (*Id.* at p. 848, quoting *Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254].)

The Court of Appeal in the present case appears to have interpreted this language from *Cooper* as calling for a somewhat heightened, rather than a

---

[11]Because we conclude that the exemptions in question are rationally related to a legitimate, reasonably conceivable public purpose, the classifications challenged here are distinguishable from those at issue in *D'Amico* v. *Board of Medical Examiners*, *supra*, 11 Cal.3d 1, and *Hays* v. *Wood* (1979) 25 Cal.3d 772 [160 Cal.Rptr. 102, 603 P.2d 19], in which the courts struck down statutory classifications after finding that they bore no rational relationship to a legitimate state interest.

restrained, standard of review. This court, however, explained in *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137 [211 Cal.Rptr. 368, 695 P.2d 665] (*Fein*)—a decision rejecting an equal protection challenge to the validity of a provision of the Medical Injury Compensation Reform Act of 1975 (MICRA)—that the *Cooper* formulation has "never been interpreted to mean that we may properly strike down a statute simply because we disagree with the wisdom of the law or because we believe that there is a fairer method for dealing with the problem." (38 Cal.3d at p. 163.) The court in *Fein* explained that in that case, as well as in the court's earlier MICRA decisions, our court had conducted the "serious and genuine judicial inquiry" referred to in *Cooper* by (1) finding that "the statutory classifications are rationally related to the 'realistically conceivable legislative purpose[s]' (*Cooper, supra*, 21 Cal.3d at p. 851) of MICRA," and (2) by declining to "invent[] fictitious purposes that could not have been within the contemplation of the Legislature . . . ." (*Fein, supra*, 38 Cal.3d at p. 163, italics omitted.)[12]

We conclude that the exemptions at issue in the present case, like the classifications at issue in *Fein*, cannot be found unconstitutional under a proper application of the rational relationship test. The explanations or justifications for the exemptions that we have noted above—that the attorneys who fall within each category may be less likely than other attorneys to represent a significant number of clients on a full-time basis, or may be less likely than other attorneys to need to attend continuing education classes in order to be aware of recent developments in the law or remain competent

---

[12]At the time *Cooper* v. *Bray, supra*, 21 Cal.3d 841, and similar cases (see, e.g., *Newland* v. *Board of Governors, supra*, 19 Cal.3d 705, 711; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 865 & fn. 7 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]) were decided by this court, there was some suggestion in the academic literature that the United States Supreme Court might be moving toward the adoption of a so-called "newer equal protection," which would provide a "new bite" for the traditional "rational basis" test (see generally, Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection* (1972) 86 Harv. L.Rev. 1), and some of the analysis in those opinions may reflect that milieu. Since that time, the United States Supreme Court explicitly has adopted an "intermediate" equal protection standard of review that is applicable in cases involving classifications that discriminate on the basis of gender or illegitimacy (see, *ante*, fn. 7, p. 641), but at the same time has reaffirmed the deferential nature of the restrained "rational relationship" equal protection standard. (See, e.g., *FCC* v. *Beach Communications, Inc., supra*, 508 U.S. 307, 313-316 [113 S.Ct. 2096, 2100-2103].) Contrary to the suggestions in Justice Brown's dissenting opinion, this court's decision in *Fein* makes it clear that, under both the federal and state equal protection clauses, the rational relationship test remains a restrained, deferential standard, albeit one that continues to provide protection against classifications that do not bear a rational relationship to a reasonably conceivable, legitimate purpose. (See also *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913-924 [13 Cal.Rptr.2d 245, 838 P.2d 1198] [applying same rational relationship standard in evaluating equal protection claims under federal and California Constitutions]; *Adams* v. *Commission on Judicial Performance, supra*, 8 Cal.4th 630, 658-661 [same].)

practitioners—are " '*realistically conceivable* legislative purpose[s],' " rather than "fictitious purposes that *could not have been* within the contemplation of the Legislature." (*Fein, supra,* 38 Cal.3d at p. 163, italics added.) And the exemptions are "rationally related" to the consumer-protection purpose of the MCLE program insofar as they identify categories of attorneys who, as compared to other categories of attorneys, may not pose as serious a risk to consumers even if these attorneys are not subject to a continuing legal education requirement. As we have explained, "[c]ountless constitutional precedents establish . . . that the equal protection clause does not prohibit [the state] from implementing a reform measure 'one step at a time' [citation], or prevent it 'from striking the evil where it is felt most.' [Citation.]" (*American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d 359, 371.) ■ These authorities teach that the equal protection guarantee neither requires nor authorizes a court to invalidate a consumer protection measure like the MCLE program simply because the program, as adopted, does not go as far as it might have in protecting consumers. (See, e.g., *Railway Express* v. *New York* (1949) 336 U.S. 106, 110 [69 S.Ct. 463, 466, 93 L.Ed. 533] ["It is no requirement of equal protection that all evils of the same genus be eradicated or none at all."]; *McDonald* v. *Board of Election* (1969) 394 U.S. 802, 809 [89 S.Ct. 1404, 1409, 22 L.Ed.2d 739] ["[A] legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked."].)[13]

■ In declining to accept these justifications for the challenged exemptions, the Court of Appeal relied upon the circumstance that there was "no

---

[13]One amicus curiae argues that the three exemptions in question should be found unconstitutional because, unlike the exemptions for full-time state and federal employees (see, *ante,* fn. 5, pp. 636-637), these exemptions are not lost if the exempt attorneys actually undertake to represent a private client. In view of the substantially greater number and diversity of attorneys included within the categories of state and federal attorneys, as compared to those falling within the three exemptions here at issue, we cannot find that there is no rational basis for providing a narrower scope for the exemptions accorded to state and federal employees.

In any event, the governing authorities establish that under the rational relationship standard, a court may not strike down a classification simply because the classification may be imperfect (see, e.g., *Dandridge* v. *Williams* (1970) 397 U.S. 471, 485 [90 S.Ct. 1153, 1161-1162, 25 L.Ed.2d 491]) or because it may be "to some extent both underinclusive and overinclusive." (*Vance* v. *Bradley* (1979) 440 U.S. 93, 108 [99 S.Ct. 939, 948, 59 L.Ed.2d 171].) The circumstance that the scope of the various exemptions in the MCLE program could have been more congruent does not provide a sufficient basis to invalidate them under the rational relationship standard. (See, e.g., *New York Transit Authority* v. *Beazer* (1979) 440 U.S. 568, 593 [99 S.Ct. 1355, 1369-1370, 59 L.Ed.2d 587] ["Because [the classification] does not circumscribe a class of persons characterized by some unpopular trait or affiliation, it does not create or reflect any special likelihood of bias on the part of the ruling majority. Under these circumstances, it is of no constitutional significance that the degree of rationality is not as great with respect to certain ill-defined subparts of the classification as it is with respect to the classification as a whole." (Fn. omitted.)].)

support" in the legislative history of section 6070 to indicate that these were the actual explanations of the rationale or motivation for the adoption of the exemptions, and that "no member of the Bar or other person involved in the design of the [M]CLE program was willing to declare under penalty of perjury that the exemptions were based upon this theory . . . ." The Court of Appeal suggested, instead, that the legislative history of section 6070 "indicates the exempted groups were added in piecemeal fashion, benefiting certain lawyers who were serving in the Legislature or otherwise and did not wish to be ' "dragged into a classroom." ' "

In relying, as a basis for its constitutional ruling, upon the absence of evidence in either the legislative history or in the court record to indicate that the proffered justifications for the exemptions were the actual motivation for the adoption of the exemptions, and upon its view that other, less lofty considerations constituted the actual motivation for the enactment of such exemptions, the Court of Appeal failed to adhere to several fundamental tenets of the rational relationship standard of review. ■ As the United States Supreme Court has explained: "[T]he absence of ' "legislative facts" ' explaining the distinction '[o]n the record' [citation] has no significance in rational-basis analysis. [Citations.] In other words, a legislative choice is not subject to courtroom factfinding and may be based on rational speculation *unsupported by evidence or empirical data.*" (*FCC* v. *Beach Communications, Inc., supra,* 508 U.S. 307, 315 [113 S.Ct. 2096, 2102], italics added; see also *Heller* v. *Doe* (1993) 509 U.S. 312, 320 [113 S.Ct. 2637, 2643, 125 L.Ed.2d 257] ["A State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification."].) Furthermore, the high court has explained that when there is a reasonably conceivable justification for a classification, "[i]t is . . . 'constitutionally irrelevant whether [the] reasoning in fact underlay the legislative decision' " (*U. S. Railroad Retirement Bd.* v. *Fritz, supra,* 449 U.S. 166, 179 [101 S.Ct. 453, 461], quoting *Flemming* v. *Nestor* (1960) 363 U.S. 603, 612 [80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435]), or whether the "conceived reason for the challenged distinction actually motivated the legislature." (*FCC* v. *Beach Communications, Inc., supra,* 508 U.S. 307, 315 [113 S.Ct. 2096, 2102].) Thus, in instances in which the rational relationship standard is applicable, a classification that, in fact, is rationally related to a reasonably conceivable legitimate public purpose may not be set aside as denying the equal protection of the laws on the ground that the Legislature or other policy maker that fashioned the classification may have acted out of what is perceived as self-interest or may have had some other asserted "politically motivated" purpose for supporting the measure. (Accord, *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 727 [119 Cal.Rptr. 631, 532 P.2d 495] ["[T]he validity of a legislative act does not depend on the subjective motivations of its draftsmen but rests instead on the objective effect of the legislative terms."].)

 Accordingly, we conclude that under a proper understanding and application of the "rational relationship" equal protection standard, the exemptions to the MCLE program here at issue cannot be found unconstitutional. The Court of Appeal erred in reaching a contrary conclusion.[14]

## IV

The judgment of the Court of Appeal is reversed, and the matter is remanded to the Court of Appeal with directions to affirm the summary judgment in favor of defendants.

Mosk, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**KENNARD, J.**—I dissent.

Unlike the majority, I agree with the Court of Appeal that as currently structured the State Bar's program of mandatory continuing legal education (MCLE), a program that this court established by court rule, denies California attorneys the equal protection of the law guaranteed by the state and federal Constitutions. The MCLE program denies equal protection by granting complete exemptions from all continuing education requirements, for no rational and legitimate reason, to retired judges, law school professors, and state officers and elected officials. I do not agree with the majority that this court is compelled to decide this equal protection issue—particularly as it relates to the state Constitution—by using the traditional rational basis standard. Nor do I agree with the majority that when the MCLE's program's exemptions are tested under that standard, they are justifiable.

---

[14]In endorsing the Court of Appeal's determination, Justice Kennard's and Justice Brown's dissenting opinions inappropriately fail to apply the rational relationship test in a deferential manner, and instead effectively treat that test as one that permits a court, when ruling on an equal protection challenge under that standard, to reweigh the policy choices that underlay a legislative or quasi-legislative classification or to reevaluate the efficacy of the legislative measure. Contrary to the implication conveyed by the terminology in Justice Kennard's dissent, our holding on the constitutional issue in this case is based not upon a determination or judgment that retired judges, elected officials, or full-time law professors "deserve exemption" from, or "do not need," the MCLE requirements (see dis. opn. of Kennard, J., *post*, at pp. 657, 658), but simply upon a conclusion that the exemptions are not irrational or arbitrary. Thus, although it certainly would be reasonable for a policymaker to conclude that it is as important to require part-time attorneys to complete continuing education courses as it is to require full-time attorneys to do so, it does not follow that it would be arbitrary or irrational for a policymaker to determine that it is more important to impose such requirements on full-time attorneys who are likely to represent more clients, and to impose the requirement only on such attorneys. As the United States Supreme Court has made clear, a state "need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." (*McDonald* v. *Board of Election, supra*, 394 U.S. 802, 809 [89 S.Ct. 1404, 1409].)

STANDARD OF REVIEW

The United States Supreme Court and this court have enunciated three standards of review for deciding constitutional equal protection challenges. (See generally, Tribe, American Constitutional Law (2d ed. 1988) § 16-32, p. 1601 et seq.) For legislation containing a "suspect" classification, such as race, or touching upon a fundamental interest, such as voting, courts have been directed to apply strict scrutiny and to uphold the legislation only if its classification is precisely tailored to further a compelling governmental interest. (*Adarand Constructors, Inc.* v. *Pena* (1995) 515 U.S. 200, 227 [115 S.Ct. 2097, 2112-2113, 132 L.Ed.2d 158]; *Plyler* v. *Doe* (1982) 457 U.S. 202, 216-217 [102 S.Ct. 2382, 2394-2395, 72 L.Ed.2d 786]; *Darces* v. *Woods* (1984) 35 Cal.3d 871, 888 [201 Cal.Rptr. 807, 679 P.2d 458]; *Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 466 [125 Cal.Rptr. 129, 541 P.2d 881].) For legislation discriminating on the basis of gender or illegitimacy, courts are to apply intermediate scrutiny and to uphold the legislation only if its classification serves an important governmental objective and is substantially related to achievement of that objective. (*United States* v. *Virginia* (1996) 518 U.S. 515, 533 [116 S.Ct. 2264, 2275-2276, 135 L.Ed.2d 735]; *Craig* v. *Boren* (1976) 429 U.S. 190, 197 [97 S.Ct. 451, 456-457, 50 L.Ed.2d 397]; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 643, fn. 2 [183 Cal.Rptr. 508, 646 P.2d 179].) Finally, when the conditions requiring either strict or intermediate scrutiny are absent, courts are to apply what is commonly called the "rational basis" standard of review, under which challenged legislation is upheld if its classification is rationally related to a legitimate governmental purpose. (*Romer* v. *Evans* (1996) 517 U.S. 620, 631 [116 S.Ct. 1620, 1626-1627, 134 L.Ed.2d 855]; *FCC* v. *Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [113 S.Ct. 2096, 2100-2101, 124 L.Ed.2d 211]; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10].)

The majority holds that the proper standard of review for the equal protection challenge in this case is the highly deferential rational basis standard. (Maj. opn., *ante*, at p. 640.) The majority justifies its selection of this standard by citing decisions holding that this minimal standard is appropriate for equal protection challenges to classifications in professional or occupational license laws. (See, e.g., *Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483, 488-489 [75 S.Ct. 461, 464-465, 99 L.Ed. 563]; *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1, 17.)

Petitioner has challenged the MCLE requirements under the equal protection provisions of both the state and the federal Constitutions. In construing the California Constitution's equal protection guarantee, this court has not

slavishly followed decisions of the federal high court construing the equal protection clause of the Fourteenth Amendment to the federal Constitution. (Compare *Butt* v. *State of California* (1992) 4 Cal.4th 668, 686 [15 Cal.Rptr.2d 480, 842 P.2d 1240] [education is fundamental right for equal protection purposes under state Constitution] with *San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 37-39 [93 S.Ct. 1278, 1299-1300, 36 L.Ed.2d 16] [declining to give education the status of a fundamental right for purposes of federal equal protection].) Because the challenge here is brought under the state as well as the federal Constitution, we are not obligated to follow the many federal decisions that the majority fondly cites. Rather, when this court finds cogent reasons to chart a different course, "[w]e have the power and the duty to give independent meaning and force to the provisions of our state charter." (*People* v. *Cahill* (1993) 5 Cal.4th 478, 558 [20 Cal.Rptr.2d 582, 853 P.2d 1037] (dis. opn. of Kennard, J.).)

The rational basis standard of review, as traditionally applied, is not appropriate when the equal protection challenge is to a court rule. As this court has explained, traditional rational basis review "manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government." (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1, 16.) This justification for an effete standard of review is absent when the equal protection challenge is not to a law enacted by a co-equal branch of government but to a court rule. The MCLE requirements that petitioner here challenges were not imposed by a bill passed by the Legislature and signed by the Governor, nor were they imposed by an initiative adopted by the voters. This court imposed the MCLE requirements by adopting rule 958 of the California Rules of Court. The restraint that this court should and usually does exercise when considering equal protection challenges to laws enacted by the Legislature, or by the voters through the initiative process, is unnecessary and unfitting when this court is deciding an equal protection challenge to a court rule. We owe ourselves no particular deference. The United States Supreme Court has itself subjected allegedly discriminatory court rules to a form of heightened scrutiny. (See, e.g., *Frazier* v. *Heebe* (1987) 482 U.S. 641 [107 S.Ct. 2607, 96 L.Ed.2d 557].) This court likewise has a particular responsibility to ensure that classifications we impose by court rule do not discriminate arbitrarily.

The majority asserts that traditional rational basis review is appropriate because in adopting the court rule by which the MCLE program came into being this court was merely deferring to "legislative policy judgments embodied in the Legislature's enactment of [Business and Professions Code] section 6070." (Maj. opn., *ante,* at p. 644, fn. 9.) Responsibility for the MCLE program is not so easily shirked. Attorney admissions, education, and

discipline are matters over which this court has inherent authority, as this court recently proclaimed in a decision authored by the Chief Justice. (*In re Attorney Discipline System* (1998) ˙19 Cal.4th 582, 592-593 [79 Cal.Rptr.2d 836, 967 P.2d 49].) We quoted with approval a law review article's statement that " 'In each state it is the supreme court, with or without the legislative approval, that dictates the standards for education, admission and discipline of attorneys.' " (*Id.* at p. 593, quoting Martineau, *The Supreme Court and State Regulation of the Legal Profession* (1980-1981) 8 Hastings Const.L.Q. 199, 202.) In enacting Business and Professions Code section 6070, the Legislature implicity acknowledged this court's primacy in matters relating to attorney qualifications by merely directing the State Bar to *request* that this court adopt an MCLE program. This court was not required to accede to this request, much less to accept all of the Legislature's suggestions about the program's details. In short, MCLE is this court's program, and deference to the Legislature should play no part in our review of its evident shortcomings.

Because the law challenged here is a court rule, not legislation enacted by a co-equal branch, the rational basis test, as traditionally applied, is unnecessarily and inappropriately weak and deferential. Because this court has plenary authority to determine the proper standards of review for equal protection challenges under the state Constitution, this court is not compelled to apply the conventional rational basis test. Instead, this court should conduct a thorough and unbiased inquiry into whether the exemptions are sufficiently related to the legitimate goals of the MCLE program to be enforced without denying practicing attorneys the equal protection of the law guaranteed by our state Constitution. It is unnecessary to determine the precise standard that should be used, however, because the challenged exemptions are invalid even under the traditional rational basis test that the majority applies here.

## Applying the Rational Basis Standard

In applying the rational basis standard of review, I begin by asking what purpose the MCLE requirements are intended to serve. I agree with the majority that the basic purpose of MCLE is consumer protection. The aim of continuing legal education is to provide continuing assurance to the public that all California attorneys, no matter how many years may have passed since their law school graduation and State Bar admission, have the knowledge and the skills to provide their clients with high quality legal services.

To achieve this objective, the MCLE program requires that every three years, as a condition of maintaining their active State Bar membership,

attorneys complete thirty-six hours of approved legal education, including at least four hours of legal ethics and an additional four hours of either legal ethics, law practice management, or civil rights remedies. (See Cal. Rules of Court, rule 958(c).) The State Bar, acting under authority conferred by this court (*ibid.*), has adopted implementing rules and regulations that require, in addition, that "[a]t least one [hour] shall relate to prevention, detection, and treatment of substance abuse and emotional distress, but no more than six [hours] shall relate to emotional distress," and that "[a]t least one [hour] shall relate to elimination of bias in the legal profession based on any of, but not limited to the following characteristics: sex, color, race, religion, ancestry, national origin, blindness or other physical disability, age, and sexual orientation." (State Bar Min. Cont. Legal Ed. Rules & Regs., § 2.1.3.)

Although serious questions have been raised about the effectiveness of the MCLE program as currently implemented, I here assume that in general the program is of legitimate value in protecting consumers by reducing the incidence and seriousness of legal malpractice. Instruction in substantive law and legal procedure may reduce attorney mistakes in advising and representing clients. Instruction in legal ethics may prevent attorneys from harming their clients by unwitting ethical violations. Instruction in law office management may reduce mistakes caused by improper handling of client funds, inadvertently missed filing deadlines, and the like. Instruction in eliminating bias from the legal profession may make attorneys more aware of such biases and assist in eliminating them. Finally, instruction in preventing, detecting, and treating substance abuse and emotional distress may avoid attorney mistakes and malpractice resulting from substance abuse and stress-related problems.

For present purposes, the essential question is not whether MCLE in general benefits consumers of legal services, but how exempting three groups of practicing attorneys from the MCLE requirements may be reconciled with this consumer protection purpose. Before addressing this question directly, I consider the majority's argument that the MCLE exemptions are largely immune from equal protection scrutiny because legislation need not be comprehensive and can address a problem piecemeal or only in those aspects where the need for regulation appears greatest. (Maj. opn., *ante*, at pp. 644-645.) In *Hays v. Wood* (1979) 25 Cal.3d 772, 790 [160 Cal.Rptr. 102, 603 P.2d 19], this court rejected reliance on the same authorities that the majority now cites, "at least insofar as they relate to the application of the equal protection provisions of our state Constitution." We explained that the Legislature may not single out a group for regulation "wholly at its whim" (*id.* at p. 790) but rather "its decision as to where to 'strike' must have a rational basis in light of the legislative objectives." (*Id.* at p. 791.) In

other words, there must be " 'some rationality in the nature of the class singled out.' " (*Ibid.*; see also *FCC* v. *Beach Communications, Inc., supra,* 508 U.S. 307, 323, fn. 3 [113 S.Ct. 2096, 2106] (conc. opn. of Stevens, J.) [stating his view that when a law "imposes a burden on one group, but leaves unaffected another that is similarly, though not identically, situated, 'the Constitution requires something more than merely a "conceivable" or "plausible" explanation for the unequal treatment' "].)

The majority proposes two justifications for exempting from all MCLE requirements those practicing attorneys who are retired judges, law professors, or state officers or elected officials. I examine these justifications in turn.

The majority states: "First, it would not have been irrational to conclude that the attorneys in each of the exempted categories, *as a general matter*, are less likely than other attorneys to represent clients on a full-time basis, thus rendering the need for a continuing education requirement less vital, as a matter of consumer protection, for these classes than for other attorneys." (Maj. opn., *ante*, at pp. 645-646, italics in original.)

This proposed justification contains within itself an assumption I utterly reject—that an MCLE exemption for attorneys who practice only part-time is rationally related to the goal of consumer protection. How is it rationally related? Is it rational to suppose that part-time lawyers are more likely than full-time lawyers to be aware of new laws and regulations? Certainly not. Those practicing a trade or profession only part-time are *less* likely to be aware of new legal developments, and thus *more* in need of continuing education, than those who practice full-time. Is it rational to suppose that clients of part-time lawyers need less protection from incompetent representation than the clients of full-time lawyers? Certainly not. Clients of part-time lawyers are as vulnerable to the damage caused by legal malpractice, and as deserving of protection, as clients of full-time lawyers. Thus, I do not see how an exemption for part-time lawyers is rationally related to consumer protection. Indeed, I can think of no other licensing law that exempts part-time practitioners from requirements aimed at assuring continuing professional competence. Try to imagine a law that exempts from professional competency requirements those surgeons who operate on only a few patients each year, or those commercial airline pilots who make only a few flights, or those engineers or contractors who build only a few high-rise buildings or freeway overpasses. The very idea is ludicrous.

The majority's other proposed justification may seem more plausible, but only at first glance: "Second, it would not have been irrational to conclude

that, in view of their particular professional roles and experience, the attorneys in each of the exempt classes (again, *as a general matter*) are less likely than lawyers in general to need continuing education courses in order to be familiar with recent legal developments or to remain competent practitioners." (Maj. opn., *ante*, at p. 646, italics in original.) To evaluate the rationality of this proposed justification, it is necessary to examine separately the three exempt classes of attorneys and why the majority thinks that the attorneys in each class, unlike the common run of working attorneys, do not need to complete any continuing education courses.

Why does the majority think that *retired judges who have resumed the practice of law* do not need the continuing education instruction required of other attorneys? In the majority's words, retired judges deserve exemption "because of the high level of legal skills and qualifications that generally are required to obtain a position as a judge, and because the daily work of a judge involves constant exposure to and analysis of ongoing developments in the law . . . ." (Maj. opn., *ante*, at p. 646.) I find this attempted rationalization unpersuasive. The "daily work" of most judges is not sufficient to provide adequate knowledge of significant legal developments. Rather, "[p]articipation in judicial education activities is an official judicial duty." (Cal. Rules of Court, rule 970(a); see also Cal. Standards Jud. Admin., § 25 et seq. [23 pt. 2 West's Ann. Codes, Rules (Appen.) (1996 ed.) p. 688 et seq.].) The program of judicial education includes publications, classes, and seminars provided by the California Center of Judicial Education and Research (CJER). If judges need a continuing education program to perform competently as judges, why do they not need MCLE to represent clients after retirement? I assume that most judges, because of their daily work and their attendance at CJER programs, are current in their knowledge of legal developments on the day their retirements become effective. But I assume with equal justification that all attorneys are current in their legal knowledge when they first qualify for admission to the State Bar. Thereafter, however, both retired judges and recent admittees (and, indeed, all practicing attorneys) face the same obligation to promptly learn of significant legal developments relevant to the areas of law in which they practice. If recent admittees and "ordinary" working attorneys need MCLE, retired judges who choose to reactivate their State Bar membership and to represent clients have the very same need.

Why does the majority think that *state officers and elected officials* do not need the continuing education instruction required of other attorneys? The majority states that "because the work of legislators and state officers is devoted, in substantial part, to the review of the current state of the law and the consideration of proposals to modify the law, or to the implementation of

recent changes in the law, it would not be irrational to conclude that this group of attorneys, as a whole, may be less in need of MCLE courses than other attorneys, in order to remain abreast of recent developments in the law." (Maj. opn., *ante*, at p. 646.)

One may question whether state legislators actually spend the bulk of their time in a scholarly study of pending and enacted legislation, rather than in political campaigning and fundraising, responding to constituent requests and complaints, meetings with lobbyists, and legislative negotiation and dealmaking. In any event, although state legislators presumably are aware of the laws they collectively enact, these state statutes are not the only significant source of law. Federal law, local ordinances, the decisions of state and federal courts, court rules, and administrative agency rules and regulations are all sources of new law that may affect a client's interest in a particular case. State legislators are no more likely than the average practicing attorney to be aware of legal developments from these sources. The majority's rationalization is even more tenuous as applied to other state officers and elected officials, including the Lieutenant Governor, the Secretary of State, the Controller, the State Treasurer, or the Registrar of Voters. Their offices do not require them to be aware of all new legal developments, but only those developments affecting their official duties.

The majority also asserts that state officers and elected officials are likely to represent clients "in areas in which they have some particular current expertise or familiarity." (Maj. opn., *ante*, at p. 646.) The majority cites no factual basis for this assertion, and I question whether it is accurate, at least if the majority means that state officers and elected officials are likely to undertake representation in matters related to the performance of their official duties. As any such representations would likely result in a conflict of interest, I think it more likely that state officers and elected officials who choose to practice law on the side will do so only in matters unrelated to their official duties.

Why does the majority think that *full-time professors at accredited law schools* do not need the continuing education instruction required of other attorneys? The majority states that the exemption is justified "because of the outstanding academic qualifications generally required to obtain a position as a full-time professor at an accredited law school, because the work of a full-time law professor requires the intensive study, analysis, and teaching of the current state of the law, and because full-time professors at accredited law schools function in an academic setting in which lectures, publications, and frequent faculty discussions typically encompass recent developments in all areas of the law . . . ." (Maj. opn., *ante*, at p. 647.)

I agree that it would be ridiculous to require law school professors to attend classes in subjects they teach because their teaching activities are at least the functional equivalent of attending MCLE classes. But the State Bar's implementing MCLE regulations already allow for this by permitting any attorney to receive MCLE credit for teaching a law school class. (State Bar Min. Cont. Legal Ed. Rules & Regs., § 4.1.5.) The State Bar computes the credits in this way: "Credit hours for teaching a law school class are computed by multiplying the number of credit hours/units granted by the law school by 12. If a portion of a law school class is devoted to a subject set forth in section 2.1 [that is, legal ethics, law office management, civil rights remedies, prevention and treatment of substance abuse and emotional distress, and eliminating bias in the legal profession], credit hours for teaching that subject are computed by multiplying actual speaking time by one. In no case may the credit hours claimed for teaching a law school class exceed credit hours/units multiplied by 12." (State Bar Min. Cont. Legal Ed. Rules & Regs., § 5.4.1.)

This regulation allows full-time professors at accredited law schools to satisfy all MCLE requirements through their teaching activities. Indeed, teaching a single three-unit course would provide thirty-six hours of MCLE credit, enough to satisfy the MCLE requirement for a three-year period, provided only that the course included the required number of hours in the mandatory subject areas. If a full-time professor's teaching does not satisfy MCLE requirements because it does not sufficiently cover the mandatory subjects, there is no rational basis to infer that the professor is any more knowledgeable in those subjects, or any less in need of instruction, than the average practicing attorney. In view of the rule providing appropriate credit for teaching law school courses, the complete MCLE exemption for full-time professors at accredited law schools is unnecessary and unjustifiable.

Even applying the conventional rational basis test, I am unable to conclude that the challenged exemptions are rationally related to the MCLE program's legitimate purpose of consumer protection.

### REMEDY

For the reasons I have given, the MCLE program as currently structured, with its existing exemptions for retired judges, law professors, and state officers and elected officials, denies other practicing attorneys equal protection of the law. There are two possible remedies for this equal protection violation. If the exemption provisions are severable, those provisions alone may be declared invalid, and the remainder of the court rule and the implementing regulations establishing the MCLE program may be enforced.

Alternatively, if the exemption provisions are not severable, the entire MCLE program may be declared invalid and its enforcement enjoined. (See *Kopp* v. *Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 670 [47 Cal.Rptr.2d 108, 905 P.2d 1248].)

The Court of Appeal, although unanimously of the view that the MCLE exemptions failed equal protection scrutiny, could not agree on the question of remedy. Two Court of Appeal justices concluded that exemption provisions were not severable and the entire MCLE program was invalid, while the other justice would have permitted enforcement of the MCLE program without the exemptions.

Were three of my colleagues to agree with me and form a majority, we would have to decide the difficult question of remedy. Because a majority of this court finds no equal protection violation, however, the point is academic and I express no view on it.

CONCLUSION

Equal protection of the law "means simply 'that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' " (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 502 [96 Cal.Rptr. 553, 487 P.2d 1193].) Here, in effect, the majority holds that although all attorneys are equal before the law, some attorneys—retired judges, law professors, and state officers and elected officials—are more equal than others. I disagree. If a formal MCLE program, administered and supervised by the State Bar, is necessary and appropriate to assure that the knowledge and skills of practicing attorneys remains current, the MCLE program requirements should be applied uniformly to all attorneys who represent private clients. Because the current court rule arbitrarily exempts certain actively practicing attorneys from the MCLE requirements, I agree with the Court of Appeal that it violates the constitutional equal protection guarantees.

**BROWN, J.,** Dissenting.—We need look no further than the California Constitution to conclude that California's mandatory continuing legal education (MCLE) program is unconstitutional because it arbitrarily exempts certain classes of active attorneys from its requirements while imposing those requirements on others.

Article I, section 7, subdivision (a), of the California Constitution provides: "A person may not be . . . denied equal protection of the laws . . . ." Subdivision (b) of the same section provides: "A citizen or class of citizens

may not be granted privileges or immunities not granted on the same terms to all citizens." Finally, article IV, section 16, subdivision (a), provides: "All laws of a general nature have uniform operation." Significantly, the latter two provisions find no counterpart in the federal Constitution, and we have interpreted them as providing greater protection than the federal equal protection clause. Specifically, we have held that the state Constitution requires " 'a serious and genuine judicial inquiry into the correspondence between [a legislative] classification and the legislative goals' " (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254], quoting *Dorrough* v. *Estelle* (5th Cir. 1974) 497 F.2d 1007, 1011) and prohibits legislative classifications, such as those at issue here, that are "grossly overinclusive" or "underinclusive." (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 877 & fn. 17 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]; see also *State* v. *Mohi* (Utah 1995) 901 P.2d 991, 997 ["Utah's uniform operation of [the] laws provision establishes different requirements than does the federal Equal Protection Clause."].) Nevertheless, the majority does not even bother analyzing the requirements of the California Constitution independently from those of the federal Constitution. The majority should apply California's equal protection standards, in which case it would conclude, as I do, that the exemptions at issue here are unconstitutional. Instead, it simply treats the California standards as if they did not exist.

I

Our state equal protection jurisprudence grew out of a recognition of the inadequacy of federal standards. Like our state cases, the federal cases recognize two primary tiers of review: "rational basis" (see, e.g., *FCC* v. *Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [113 S.Ct. 2096, 2100-2103, 124 L.Ed.2d 211]) and "strict scrutiny" (see, e.g., *Shaw* v. *Hunt* (1996) 517 U.S. 899, 907 [116 S.Ct. 1894, 1901, 135 L.Ed.2d 207]). But, in practice, "rational basis," as used in the federal cases, means *any* basis, and "strict scrutiny" is " 'strict' in theory [but] fatal in fact." (Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection* (1972) 86 Harv. L.Rev. 1, 8 (*Evolving Doctrine*).) As a result, the outcome in every case turns on how the court chooses to characterize the classification. Suspect classifications, such as those based on race or that impact rights the court deems "fundamental," warrant strict (read "fatal") scrutiny; other classifications warrant rational basis (read "anything goes") review. (*FCC* v. *Beach Communications, Inc., supra*, 508 U.S. 307, 313-316 [113 S.Ct. 2096, 2100-2103].) As Justice Mosk so aptly put it, "[t]he vice of the binary theory . . . is that it applies either a standard that is virtually always met (the rational relationship test) or one that is almost never satisfied (the strict scrutiny test). [Citation.] Once the test is

selected, the result of its application is foreordained . . . ." (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 796 [160 Cal.Rptr. 102, 603 P.2d 19] (conc. opn. of Mosk, J.).)

Thirty years ago, Professor Gunther recognized the inadequacy of this approach to equal protection and suggested that the high court might be moving toward "means scrutiny." (*Evolving Doctrine, supra*, 86 Harv. L.Rev. at p. 24.) Under means scrutiny, courts do not second-guess legislative purposes, unless, of course, those purposes contravene explicit constitutional constraints such as the right to free speech. (*Id.* at pp. 21-23.) Instead, courts examine the *means* the legislature chose, in order to ensure that those means adequately advance the legislative purpose. (*Id.* at pp. 21, 46-47.)

Means scrutiny has the advantage of not being a subjective process that turns merely on the personal philosophies or biases of judges. (*Evolving Doctrine, supra*, 86 Harv. L.Rev. at pp. 42-43.) Rather, whether a law in fact furthers its purpose—that is, whether it has proved successful over time—is something litigants can prove or disprove based on objective criteria, and therefore it is the sort of inquiry courts are capable of making. (*Id.* at p. 24.) Moreover, because means scrutiny merely asks whether a law actually does what the legislature intended it to do, it does not interfere in the legislative process, but only encourages legislatures to do their work carefully so as to avoid unintended results. As Professor Gunther argued in his groundbreaking article, "[m]eans scrutiny . . . can improve the quality of the political process—without second-guessing the substantive validity of its results—by encouraging a fuller airing in the political arena of the grounds for legislative action. . . . [¶] . . . Too often the only assurance that the [legislature] has thought about the issues is the judicial presumption that it has. Means scrutiny would provide greater safeguards that the presumed process corresponds to reality . . . ." (*Id.* at p. 44.)

The high court adopted Professor Gunther's proposal in a series of cases interpreting the federal takings clause. Specifically, the court held that a regulation effects a taking if it does not " 'substantially advance' the 'legitimate state interest' sought to be achieved." (*Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825, 834, fn. 3 [107 S.Ct. 3141, 3147, 97 L.Ed.2d 677]; see also *Dolan* v. *City of Tigard* (1994) 512 U.S. 374, 385 [114 S.Ct. 2309, 2316-2317, 129 L.Ed.2d 304]; *Lucas* v. *South Carolina Coastal Council* (1992) 505 U.S. 1003, 1016 [112 S.Ct. 2886, 2893-2894, 120 L.Ed.2d 798]; *Keystone Bituminous Coal Assn.* v. *DeBenedictis* (1987) 480 U.S. 470, 485 [107 S.Ct. 1232, 1241-1242, 94 L.Ed.2d 472]; *United States* v. *Riverside Bayview Homes, Inc.* (1985) 474 U.S. 121, 126 [106 S.Ct. 455, 458-459, 88

L.Ed.2d 419]; *Agins* v. *Tiburon* (1980) 447 U.S. 255, 260 [100 S.Ct. 2138, 2141, 65 L.Ed.2d 106].) Obviously, this requirement that legislative means "substantially advance" legislative purposes is more demanding than rational basis review, which only requires some "rational relationship" between means and ends. (*Santa Monica Beach, Ltd.* v. *Superior Court* (1998) 19 Cal.4th 952, 1027-1028 [81 Cal.Rptr.2d 93, 968 P.2d 993] (dis. opn. of Brown, J.).) More important, in *Brown* v. *Merlo* and *Hays* v. *Wood*, we adopted means scrutiny as the standard of judicial review applicable under the state equal protection provisions.

In *Brown* v. *Merlo, supra*, we struck down an automobile guest statute that prohibited an injured automobile guest from recovering for the negligent driving of his host, except in certain narrow circumstances. (8 Cal.3d at pp. 858-859.) We noted that, if the law's purpose was to protect hospitality, it was grossly underinclusive because the law singled out "*automobile* guests as distinguished from all other guests." (*Id.* at p. 859; see also *id.* at p. 864.) On the other hand, if its purpose was to prevent collusive lawsuits between automobile guests and drivers, the law was grossly overinclusive because the vast majority of automobile guests would not file collusive lawsuits. (*Id.* at p. 859; see also *id.* at pp. 874-875.) We said, "it is unreasonable to eliminate causes of action of an entire class of persons simply because some undefined portion of the designated class may file fraudulent lawsuits." (*Id.* at p. 875.)

More generally, we noted that an "overinclusive classification scheme . . . does not treat similarly situated individuals in like manner . . . ." (*Brown* v. *Merlo, supra*, 8 Cal.3d at p. 876.) Accordingly, we held that "[a]lthough the constitutional provisions do not require absolute precision in the designation of classifications, they do not tolerate classifications which are so grossly overinclusive as to defy notions of fairness or reasonableness." (*Id.* at p. 877.) We reached the same conclusion with respect to grossly underinclusive classifications (*id.* at p. 877, fn. 17), and we made clear that we were construing the state Constitution and therefore were not constrained by the possibility that more deferential standards might apply under the federal Constitution. (*Id.* at p. 865, fn. 7.)

Thus, our holding in *Brown* v. *Merlo, supra*, 8 Cal.3d 855, instructed courts to scrutinize the *means* the Legislature chose to advance its purpose. Specifically, we held that if the Legislature relied on grossly overinclusive or underinclusive classifications, then it chose means that are constitutionally inadequate, and courts must strike the law down. And so as to leave absolutely no doubt about this point, we reiterated it seven years later in *Hays* v. *Wood*. In that case, we struck down a law that treated public officials who were attorneys or brokers differently from other public officials with

respect to income disclosure. (*Hays* v. *Wood, supra,* 25 Cal.3d at pp. 778-779.) The Attorney General justified the statute as a protection against self-serving bias on the part of public officials, arguing that attorneys and brokers receive greater profit from their business endeavors than other persons. (*Id.* at pp. 788-789.) We found this justification inadequate because it was underinclusive. Specifically, we saw no reasonable explanation for "the selection of but two of the several professions having relatively high profit margins for . . . special treatment . . . ." (*Id.* at p. 789.) We noted that the Attorney General's argument did "no more than shift the focus of inquiry from one distinction to another." (*Ibid.*) In other words, the law might be justified in treating attorneys and brokers differently from business people in general, but it was not justified in treating attorneys and brokers differently from other business people who enjoyed comparably high profit margins. (*Id.* at pp. 789-790.)

Significantly, we expressly rejected the federal precedents on which the majority relies today, including *Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483 [75 S.Ct. 461, 99 L.Ed. 563], saying, "respondents read these cases too broadly—*at least insofar as they relate to the application of the equal protection provisions of our state Constitution.*" (*Hays* v. *Wood, supra,* 25 Cal.3d at p. 790, italics added.) We continued: "*Werner* v. *Southern Cal. etc. Newspapers* [(1950) 35 Cal.2d 121 [216 P.2d 825, 13 A.L.R.2d 252]], which represents the definitive statement of the subject doctrine in this jurisdiction, makes it lucidly apparent that the legislative body, when it chooses to address a particular area of concern in less than comprehensive fashion by merely 'striking the evil where it is felt most' [citation] may not do so wholly at its whim." (*Ibid.*) Rather "its decision as to where to 'strike' must have a rational basis in light of the legislative objectives." (*Id.* at p. 791.) We held that the ultimate question is "whether there exists a reasonable basis for the legislative body to conclude that the members of [the legislative classification] made up 'the most conspicuous example of the danger it sought to preclude' [citation]." (*Id.* at p. 792, quoting *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 132 [216 P.2d 825, 13 A.L.R.2d 252].)

Therefore, though the federal Constitution may permit legislatures to take a shotgun approach to problem solving (see *Williamson* v. *Lee Optical Co., supra,* 348 U.S. 483), our state Constitution insists on greater precision, and it does so by requiring courts to scrutinize the means the Legislature chose to advance its purposes. Rather than merely "rubberstamping" the legislative categories at issue here, we should be engaging in " 'a serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals' " (*Newland* v. *Board of Governors, supra,* 19 Cal.3d at p. 711), and, more particularly, we should be asking whether the legislative

classifications substantially advance the legislative purposes without being "grossly overinclusive" or "underinclusive." (*Brown* v. *Merlo, supra,* 8 Cal.3d at p. 877 & fn. 17.)

## II

Applying these standards, I have no trouble concluding that the California MCLE program violates the equal protection guaranties of our state Constitution by exempting some active attorneys without exempting others who are "similarly situated with respect to the legitimate purpose of the law." (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].)

Rule 958 of the California Rules of Court authorized the State Bar to establish the MCLE program. Pursuant to rule 958, the Board of Governors of the State Bar adopted detailed rules and regulations that govern MCLE. These regulations created five exemptions from the program, three of which are at issue here: (1) retired judges, (2) officers and elected officials of the State of California, and (3) full-time law professors at accredited law schools.

The majority hypothesizes two purposes that it claims justify the exemptions: (1) attorneys in the exempted categories "*as a general matter,* are less likely . . . to represent clients on a full-time basis . . . ," and (2) these attorneys "(again, *as a general matter*) are less likely . . . to need continuing education . . . ." (Maj. opn., *ante,* at p. 646, original italics.) The majority is wrong *ab initio* under our state Constitution to hypothesize purposes that support the exemptions. In *Brown* v. *Merlo, supra,* we rejected "a highly fictional approach to statutory purpose." (8 Cal.3d at p. 865, fn. 7.) We made it clear that, under the state Constitution, "statutory classifications [must] bear some substantial relationship to an actual, not 'constructive,' legislative purpose." (*Ibid.*) We reaffirmed this principle in *Cooper* v. *Bray* (1978) 21 Cal.3d 841, 854 [148 Cal.Rptr. 148, 582 P.2d 604], where we said that the purpose under consideration must be one that "can realistically be ascribed to the Legislature." The majority points to nothing in the legislative record indicating that the purposes it hypothesizes are the "actual" or "realistic[]" purposes underlying the exemptions, and, as we shall see, they are in fact highly unlikely.

Moreover, even if the State Bar actually had in mind the purposes that the majority hypothesizes, the classifications reflected in the exemptions violate the state equal protection guaranties because they are grossly overinclusive and underinclusive and thus do not afford "similarly situated" persons "like

treatment." (*Purdy & Fitzpatrick* v. *State of California, supra*, 71 Cal.2d at p. 578.) First, though it may well be true that retired judges, state officers, and full-time law professors are less likely than other active attorneys to represent clients on a full-time basis, this is only one very small selection of the active attorneys for whom this description applies, and it is certainly not " 'the most conspicuous example.' " (*Hays* v. *Wood, supra*, 25 Cal.3d at p. 792, quoting *Werner* v. *Southern Cal. etc. Newspapers, supra*, 35 Cal.2d at p. 132.) If the purpose of the exemptions were truly to exempt attorneys who represent clients on a part-time basis, the rule could easily have included a much broader and more precise exemption that named part-time attorneys expressly. Moreover, as Justice Kennard points out, the hypothetical purpose of exempting part-time attorneys simply makes no sense in light of the more general purpose of consumer protection that underlies the MCLE program: an incompetent part-time attorney is just as dangerous to the consumer as an incompetent full-time attorney. Indeed, the State Bar recognizes this fact by removing the exemption for state employees if they work just one hour outside the scope of their state employment. (State Bar Com. on MCLE, Guidelines: MCLE Rules & Regs., § 6.1.4, eff. Sept. 1, 1995.)

Second, the majority speculates, without any empirical verification, that retired judges, state officers, and full-time law professors are "less likely . . . to need continuing education." (Maj. opn., *ante*, at p. 646.) While this is a comforting thought, it is a questionable premise. The majority cites "the high level of legal skills and qualifications that generally are required to obtain a position as a judge," and it points out that "the daily work of a judge involves constant exposure to and analysis of ongoing developments in the law." (*Ibid.*) True. But high qualifications and exposure to ongoing developments in the law are only one way in which MCLE serves its consumer-protection purpose. MCLE also requires that attorneys study legal ethics, law practice management, and the prevention of substance abuse and emotional distress (Cal. Rules of Court, rule 958(c); State Bar, MCLE Rules & Regs., § 2.1), subjects which judges do not usually encounter in the course of their work. Furthermore, even if judges are somehow less in need of continuing education *while sitting as judges*, the majority does not explain why it is rational to assume they are still less in need after they have returned to private practice. As Justice Kennard points out, the purpose of *continuing* education is not to ensure that lawyers are competent and knowledgeable when they first start their practices, but to ensure that they remain competent and knowledgeable as the years progress.

More important, the classifications are once again grossly overinclusive and underinclusive. Many attorneys who are not retired judges have just as much expertise as retired judges, and at least some retired judges lack the

expertise the majority imputes to them. If the purpose of the exemptions were truly to exempt attorneys who are less in need of continuing education, the rule could easily have allowed attorneys to satisfy MCLE by taking a statewide examination.

The same arguments can be made about the relative knowledge and expertise of state officers and full-time law professors. While individuals in these groups may have more legal expertise than attorneys in general, the majority's assertion that, as a group, they have more legal expertise would probably fail to withstand empirical verification, particularly in the areas of legal ethics, law practice management, and the prevention of substance abuse and emotional distress. In any case, these employment categories are, at best, an imperfect basis for assessing legal expertise. And the majority's assertion that state officers are likely to practice only in areas in which they have expertise is mere speculation and probably true about almost every attorney in the state.

If the purposes of the exemptions are in fact those that the majority has hypothesized, then the State Bar rules achieve those purposes in a ludicrously impractical way, though they could just as easily achieve the same purposes directly and precisely. That approach to legislation is not rational, and we exhibit disrespect for the legislative process when we impute such an irrational approach to our policymakers. Moreover, we undermine the integrity of the political process when we hypothesize such highly unlikely purposes in order to uphold arbitrary and self-serving exemptions.

I dissent.

Appellant's petition for a rehearing was denied October 20, 1999. Kennard, J., and Brown, J., were of the opinion that the petition should be granted.