*1112 WERDEGAR, J., Concurring and Dissenting.
I agree with the majority’s conclusion that defendant Christine Barrett was entitled to have a jury decide whether the state had proven she met the statutory standards for involuntary commitment under Welfare and Institutions Code section 6500.[1] (Maj. opn., ante, at p. 1096.) But the majority’s next step in its analysis is unpersuasive: it finds that although mentally ill persons facing involuntary civil commitment under the Lanterman-Petris-Short Act (§ 5000 et seq.) are entitled by statute to have the court advise them “of [their] right to demand a jury trial” (§ 5302), persons—like Barrett—who, are alleged to be mentally retarded and a danger to themselves or others who similarly face involuntary civil commitment are not entitled to the same jury advisement. As Justice Liu explains in his separate opinion, the differences between mentally ill persons and those alleged to be mentally retarded “do not support a categorical distinction between the two groups with respect to a jury right advisement.” (Cone. & dis. opn. of Liu, J., post, at p. 1129.)
Article I, section 24 of the California Constitution provides that “[r]ights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution.” The California Constitution is thus a document of independent force, and the people of this state are not dependent on the United States Constitution as the primary source of their protection. (See, e.g., People v. Monge (1997) 16 Cal.4th 826, 847, 871 [66 Cal.Rptr.2d 853, 941 P.2d 1121] (dis. opn. of Werdegar, J.) [“good reasons exist to rely on our state Constitution even before we consider whether the federal Constitution applies . . .”].) I thus agree with the approach taken by my colleague Justice Liu, in his separate opinion, relying on the state equal protection guarantee in article I, section 7 of the California Constitution, which provides that “[a] person may not be . . . denied equal protection of the laws . . . .” As he explains (cone. & dis. opn. of Liu, J., post, at p. 1144), this court’s landmark decision in Serrano v. Priest (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929] made clear that our state equal protection clause is “possessed of an independent vitality which, in a given case, may demand an analysis different from that which would obtain if only the federal standard were applicable.” (Id. at p. 764.)
A critical first step when determining whether Barrett has a state equal protection right to an advisement of her jury trial right is to discern the appropriate equal protection standard, or level of scrutiny, applicable in the case. We recently explained in Hernandez v. City of Hanford (2007) 41 Cal.4th 279, 298-299 [59 Cal.Rptr.3d 442, 159 P.3d 33], that the first level of scrutiny “ ‘ “is the basic and conventional standard for reviewing economic and social welfare legislation in which there is a ‘discrimination’ or differentiation of treatment between classes or individuals. . . .” ’ [Citation.] This first *1113 basic equal protection standard generally is referred to as the ‘rational relationship’ or ‘rational basis’ standard.” But while the rational basis test under the Fourteenth Amendment to the United States Constitution has been applied to economic and social welfare legislation (see FCC v. Beach Communications, Inc. (1993) 508 U.S. 307 [124 L.Ed.2d 211, 113 S.Ct. 2096] [applying the rational basis test to uphold a portion of the Cable Communications Policy Act of 1984 (47 U.S.C. § 521 et seq.)]; Warden v. State Bar (1999) 21 Cal.4th 628 [88 Cal.Rptr.2d 283, 982 P.2d 154] [applying the rational basis test to reject a challenge to exemptions from minimum continuing legal education for retired judges, state officers and elected officials]), that highly deferential test is inappropriate here, where Barrett faces involuntary civil commitment under section 6500. This serious curtailment of her personal liberty, along with the stigma that attaches upon being found both mentally retarded and dangerous,[2] justifies a heightened standard in these circumstances, and for the reasons he explains, I agree with Justice Liu that the state constitutional protection of California Constitution article I, section 7, in this context, should be informed by the high court’s decision in Cleburne v. Cleburne Living Center, Inc. (1985) 473 U.S. 432 [87 L.Ed.2d 313, 105 S.Ct. 3249]. (See cone. & dis. opn. of Liu, J., post, at pp. 1137-1138; see generally id., pt. V.)
The majority justifies its decision to distinguish between persons who are mentally ill and those who are mentally retarded in part by suggesting that because Barrett is alleged to be unable to care for herself, we should assume her attorney will act in her best interests (maj. opn., ante, at pp. 1102-1103); that due to Barrett’s alleged mental deficits she would necessarily play a limited role in her defense (id. at p. 1104); and that a personal jury advisement requirement “would have little effect on enhancing either the jury trial right itself or the vital interests it protects” (ibid.). Such reasoning fails to acknowledge that those suffering from mental retardation exhibit a wide range of abilities: “they range from those whose disability is not immediately evident to those who must be constantly cared for.” (Cleburne v. Cleburne Living Center, Inc., supra, 473 U.S. at p. 442.) More importantly, the majority’s reasoning fails to accord sufficient respect to the rights of the mentally disabled, as directed by our Legislature as a matter of state policy in section 4502, which states: “Persons with developmental disabilities have the same legal rights and responsibilities guaranteed all other individuals by the United States Constitution and laws and the Constitution and laws of the *1114 State of California.” The same section provides: “It is the intent of the Legislature that persons with developmental disabilities shall have rights including, but not limited to, the following: [f] . . . [][] (j) A right to make choices in their own lives, including, but not limited to, where and with whom they live, their relationships with people in their community, the way they spend their time, including education, employment, and leisure, the pursuit of their personal future, and program planning and implementation.” (Ibid.)
Accordingly, a legal scheme in which Barrett may be forced to live in an institution, against her will and possibly for the rest of her life, without being told she could have had a jury decide her fate, when the state requires a jury advisement for mentally ill persons facing essentially the same type of commitment (§ 5302), lacks a rational basis and thus violates Barrett’s right to equal protection under the California Constitution.
Unlike the United States Constitution, the California Constitution specifies the conditions that must be present before a judgment is reversed. Article VI, section 13 of the California Constitution states: “No judgment shall be set aside, or new trial granted, in any cause ... for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.” Like Justice Liu, I conclude that the violation of Barrett’s rights under the state equal protection clause was harmless because it was not reasonably probable she would have achieved a more favorable result had the trial court informed her of her jury trial right. (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243] ,)[3] Although I disagree with the majority’s reasoning, I thus concur in its result.

 All statutory references are to this code.

 See, e.g., U.S. v. Davis (D.Md. 2009) 611 F.Supp.2d 472, 483 (parents resist having their children labeled mentally retarded “because of the stigma associated with it”); State v. Vela (2010) 279 Neb. 94, 129 [777 N.W.2d 266, 293] (“We are aware that a social stigma exists with respect to the phrase ‘mental retardation.’ ”); In re Daniel D. (R.I. 2010) 9 A.3d 651, 652, footnote 1 (noting “the State of Rhode Island recently has endeavored to eliminate use of the word ‘retarded’ and like terms in an effort to address the unfortunate stigma attached to developmental disabilities”).

 The majority criticizes the reasoning of the separate opinions, saying it is “[i]ronic[],” “largely symbolic,” and “result[s] in little real-world benefit to Barrett.” (Maj. opn., ante, at p. 1111, fn. 21.) To the contrary, although Barrett has not demonstrated prejudice resulting from the trial court’s failure to advise her of her jury trial right in the commitment hearing at issue here, she may be able to do so in the future if she is recommitted and the error recurs. Moreover, were the majority to endorse, as I do, the state equal protection analysis set forth in Justice Liu’s separate opinion, potential committees in the future would benefit from the jury trial advisement, thereby fulfilling the statutory directive that such persons have the “right to make choices in their own lives, including, but not limited to, where and with whom they live.” (§ 4502, subd. (j).)