Filed 6/2/15  P. v. Howell CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT PRESTON HOWELL,<br><br>    Defendant and Appellant. | F068038<br><br>(Super. Ct. No. FP003966A)<br><br>**OPINION** |

APPEAL from order of the Superior Court of Kern County.  Michael G. Bush, Judge.

Law Office of Stephanie L. Gunther and Stephanie L. Gunther for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna, Louis M. Vasquez, Amanda D. Cary and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A defendant convicted of certain sex offenses must register as a sex offender pursuant to Penal Code section 290.[1] Section 290.5, subdivision (a) provides that some convicted sex offenders may obtain relief from the obligation to register by obtaining a certificate of rehabilitation and pardon (certificate of rehabilitation) pursuant to section 4852.01. Section 4852.01, subdivision (c) permits a person convicted of a felony to file a petition for a certificate of rehabilitation under certain circumstances.[2] However, section 4852.01, subdivision (d) precludes persons convicted of several enumerated offenses from petitioning for a certificate of rehabilitation, including individuals convicted of violating section 288 (lewd and lascivious acts on a child under 14).

Appellant Robert Preston Howell pled guilty to violating section 288 in 1985. He petitioned for a certificate of rehabilitation pursuant to section 4852.01, subdivision (c). His ultimate goal was to be relieved of the requirement to register as a sex offender pursuant to section 290.5. The trial court denied the petition finding Howell was ineligible for the certificate because he was convicted of violating section 288. Howell asserts subdivision (d) of section 4852.01 violates his constitutional right to equal protection of the laws. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) We disagree and affirm the order denying the petition.

## DISCUSSION

""""The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment."'" [Citation.] 'The first prerequisite to a meritorious claim

---

[1] All statutory references are to the Penal Code.

[2] The conditions specified in section 4852.01, subdivision (c) are (1) the accusatory pleading must first be dismissed pursuant to section 1203.4, (2) the petitioner may not have been incarcerated in any penal institution since the accusatory pleading was dismissed, (3) the petitioner cannot be on probation for the commission of any other felony, and (4) the petitioner presents evidence he or she has lived in the state for the five years preceding the filing of the petition.

under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) "In other words, we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.) We are not concerned with whether the two proposed groups are similarly situated for all purposes, but only whether they are similarly situated for the purposes of the law challenged. (*Cooley, supra,* at p. 253.)

If we conclude two groups are similarly situated for the purposes of the law challenged, we then must decide whether the statute in question violates equal protection principles by treating the two groups disparately. This question is evaluated using one of three levels of analysis depending on the type of issue presented. If the statute involves suspect classifications or touches upon fundamental interests, it is subject to strict scrutiny and can be sustained only if the law is necessary to achieve a compelling state interest. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 640-641.) Classifications based on gender are subject to an intermediate level of review. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200 (*Hofsheier*).)

Howell admits his challenge falls into the third level of analysis, which generally applies to economic and social welfare legislation. This level of review "manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests legislation involving such differentiated treatment with a presumption of constitutionality and '[requires] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.' [Citation.]" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 16.)

3.

"Moreover, the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it*." (*Id.* at p. 17.)

While Howell's stated goal is to obtain relief from the requirement that he register as a sex offender pursuant to section 290.5, the first impediment to this goal is his inability to obtain a certificate of rehabilitation pursuant to section 4852.01. We begin by noting what is not at issue in this appeal. While Howell asserts he is an excellent candidate for a certificate of rehabilitation, the trial court never reached this issue because it concluded he was statutorily ineligible. Nor does Howell contend the trial court improperly applied section 4852.01, subdivision (d) to him. Instead, Howell argues his constitutional right to equal protection of the laws is violated by section 4852.01, subdivision (d).

Howell's opening brief relied extensively on *Hofsheier*, and cases which relied on *Hofsheier* to find equal protection violations in various settings. After the briefs were filed, the Supreme Court decided *Johnson v. Department of Justice* (2015) 60 Cal.4th 871 (*Johnson*), which overruled *Hofsheier* and disapproved of many of the cases that relied on *Hofsheier.* We gave each party an opportunity to file supplemental briefing on the effect of *Johnson* on this appeal.

We begin our analysis with a brief review of *Hofsheier, supra,* 37 Cal.4th 1185. Hofsheier pled guilty to nonforcible oral copulation with a 16-year-old girl in violation of section 288a, subdivision (b)(1). As a result of this conviction, the trial court imposed the mandatory requirement that he register as a sex offender for life pursuant to section 290. Hofsheier argued the mandatory registration requirement violated his right to equal protection of the laws because a person convicted of nonforcible sexual intercourse with a minor (§ 261.5) was not subject to the mandatory registration requirement, but was subject to a registration requirement only if the trial court, in the exercise of its discretion, chose to impose the registration requirement.

4.

The Supreme Court identified the equal protection issue as involving "the adult offender convicted under section 288a[, subdivision ](b)(1) of a voluntary sexual act with a minor 16 years or older, a group that includes defendant. State law requires all such offenders to register for life as a sex offender. In contrast, an adult offender convicted of voluntary sexual intercourse with a minor 16 years or older is not subject to mandatory registration. The issue is whether this distinction violates the equal protection clause of the Fourteenth Amendment to the United States Constitution or of article I, section 7 of the California Constitution." (*Hofsheier, supra,* 37 Cal.4th at p. 1198.)

After reviewing relevant cases, the Supreme Court concluded that because the only difference between a violation of section 288a, subdivision (b)(1) and section 261.5 was the nature of the sexual act, the two groups were sufficiently similar to merit equal protection scrutiny. (*Hofsheier, supra,* 37 Cal.4th at p. 1200.)

The Supreme Court next applied the rational relationship test to determine if there was any reasonably conceivable state of facts that could provide a rational basis for the classification. (*Hofsheier, supra,* 37 Cal.4th at pp. 1200-1201.) The Supreme Court concluded there was not a rational basis for the disparate treatment of the two groups.

> "Requiring *all* persons convicted of voluntary oral copulation with minors 16 to 17 years of age to register for life as sex offenders, while leaving registration to the discretion of the trial court for those convicted of sexual intercourse with minors of the same ages, cannot be justified by the speculative possibility that members of the former group are more likely to reoffend than those in the latter group. To sustain the distinction, there must be some plausible reason, based on reasonably conceivable facts, why judicial discretion is a sufficient safeguard to protect against repeat offenders who engage in sexual intercourse, but not with offenders who engage in oral copulation. [Citation.] No reason has been suggested why judicial discretion is insufficient, and none comes to mind. No other state requires mandatory lifetime registration as a sex offender for anyone convicted of voluntary oral copulation with a minor 16 to 17 years of age, but not for someone convicted of voluntary sexual intercourse with minors of the same age.

"No doubt there are some persons convicted of oral copulation with 16- or 17-year-old minors for whom lifetime registration is appropriate because their conduct and criminal history suggest a high risk of recidivism, but the same can be said of some individuals convicted of unlawful intercourse with minors in that same age group. The existence of such potential recidivists under both statutes argues for discretionary registration depending on the facts of the case rather than mandatory registration for all persons convicted under section 288a[, subdivision ](b)(1)." (*Hofsheier, supra,* 37 Cal.4th at pp. 1203-1204.)

The Supreme Court's explained its conclusion in the holding: "We perceive no reason why the Legislature would conclude that persons who are convicted of voluntary oral copulation with adolescents 16 to 17 years old, as opposed to those who are convicted of voluntary intercourse with adolescents in that same age group, constitute a class of 'particularly incorrigible offenders' [citation] who require lifetime surveillance as sex offenders. We therefore conclude that the statutory distinction in section 290 requiring mandatory lifetime registration of all persons who, like defendant here, were convicted of voluntary oral copulation with a minor of the age of 16 or 17, but not of someone convicted of voluntary sexual intercourse with a minor of the same age, violates the equal protection clauses of the federal and state Constitutions. This conclusion does not preclude the Legislature from requiring lifetime registration both for persons convicted of voluntary oral copulation and for those convicted of voluntary sexual intercourse, thus treating both groups the same." (*Hofsheier, supra,* 37 Cal.4th at pp. 1206-1207.)

We now turn to *Johnson, supra,* 60 Cal.4th 871. Johnson pled guilty to nonforcible oral copulation with a minor under 16 in violation of section 288a, subdivision (b)(2). After *Hofsheier* was decided, Johnson filed a petition seeking relief from section 290's mandatory registration requirement. The appellate court concluded the mandatory registration requirement violated Johnson's right to equal protection and

remanded the matter to trial court to determine if Johnson should be required to register under the discretionary provisions in section 290.006.

The Supreme Court began its analysis by noting the compelling state interest in preventing recidivism in sex offenders, and the important role mandatory registration plays in achieving that goal. (*Johnson, supra,* 60 Cal.4th at p. 876.) The Supreme Court then explained why the equal protection analysis in *Hofsheier* was "fundamentally flawed," and explained why it now concluded the equal protection clause was not violated in *Hofsheier*, or in Johnson's case. (*Johnson, supra,* at p. 879.)

The Supreme Court identified the issue as follows: "[A]n equal protection challenge can be sustained only if section 261.5 offenders and section 288a offenders are similarly situated, and if the challenger ' " negative[s] every conceivable basis" ' that might support section 261.5's [nonforcible intercourse with a minor] omission from section 290's list of offenses subject to mandatory registration. [Citations.]" (*Johnson, supra,* 60 Cal.4th at p. 882.) The Supreme Court determined "the nature and potential consequences of unlawful sexual intercourse provide actual and plausible rationales for the Legislature's omission of section 261.5 from section 290's list of offenses." (*Ibid.*)

Next, the Supreme Court explained that three of the rationales advanced by *Hofsheier* as support for the decision were erroneous. First, the Supreme Court rejected the theory that legislative inattention could explain the failure to remove section 288a's nonforcible offenses from the mandatory registration requirement of section 290. (*Johnson, supra,* 60 Cal.4th at p. 882.)

Second, the Supreme Court found support for the contention that pedophiles who engage in oral copulation, as opposed to sexual intercourse, are more likely to reoffend. "Studies indicate that pubescent minors may be more receptive to engaging in oral sex, which does not risk pregnancy and which many such minors believe is lower in risk for sexually transmitted diseases. [Citation.] As for pedophiles, who, by definition, target prepubescent minors, studies show that, '[t]ypically, pedophiles engage in fondling and

7.

genital manipulation more than intercourse,' except in cases of incest, forcible encounters, and when pedophiles prefer older children. [Citation.] In light of the foregoing, the Legislature could plausibly assume that predators and pedophiles engaging in oral copulation have more opportunities to reoffend than those engaging in sexual intercourse, and, for that reason, are especially prone to recidivism and require ongoing surveillance." (*Johnson, supra,* 60 Cal.4th at pp. 883-884.)

Third, the Supreme Court concluded there were significant differences between unlawful sexual intercourse, and nonforcible oral copulation. Recognizing that unlawful sexual intercourse could result in pregnancy, the Supreme Court observed that it would appear anomalous that section 261.5 does not require mandatory registration. Nonetheless, the Supreme Court found the possible reasoning of the Legislature in the legislative history of section 261.5.

> "The 1970 legislation that separated the offenses of rape and unlawful sexual intercourse with a female under age 18—by moving the latter from the general rape statute (§ 261) to section 261.5—originated with the State Bar of California. [Citation.] In an analysis of that legislation, the State Bar's legislative representative explained: 'When there are consenting near-adults involved, but for some reason the girl's parents or the Social Welfare Department wants to force the boy to support the child, it is unrealistic to have the connotation of "rape" attached to his crime. Many private employees do not differentiate between "statutory rape" and "forcible rape," and refuse to hire a "rapist." As a result, the capacity to earn money to support a child is severely handicapped. This bill merely seeks to eliminate this social stigma.' [Citation.] Thus, in separating and renaming the offense of unlawful sexual intercourse, the Legislature sought to eliminate, for section 261.5 offenses, the social stigma associated with the rape label so that offenders could more readily obtain employment and support children conceived as a result of such intercourse. [Citation.] This history confirms that the potential for pregnancy and parenthood has, in fact, influenced legislative decisionmaking regarding unlawful intercourse with minors.

"Indeed, more than two decades later, the Legislature made explicit findings that '[i]llicit sexual activity between adult males and teenage or younger girls in this state is resulting in the nation's highest teenage pregnancy and birth rate,' and that '[m]any of these adult males are repeat offenders who have fathered more than one child by different teenage mothers, yet accept little or no responsibility for their actions or for the support of their children.' [Citation.] Emphasizing that 'California spent $3.08 billion in 1985 to assist families headed by teenagers,' but 'would have saved $1.23 billion in welfare and health care expenses' had parenthood been delayed, the Legislature declared that '[t]he laws prohibiting adults from having sexual relations with persons under the age of 18 years must be more vigorously enforced' and that '[a]dult males who prey upon minor girls must be held accountable for their conduct and accept responsibility for their actions.' [Citation.] Based on these findings, the Legislature amended section 261.5 to subject adults convicted of sexual intercourse with minors to graduated civil penalties (ranging from $2,000 to $25,000), based on the age difference between the minor victim and the adult offender. [Citation.] Any amounts so recovered must be applied toward recouping the costs in pursuing the penalties, with the remainder deposited in the Underage Pregnancy Prevention Fund. [Citation.] These civil penalties are not applicable to persons convicted of offenses involving sexual contact other than intercourse with minor victims.

"Hence, the very real problem of teen pregnancy and its costly consequences, as well as legislative concern that stigmatization might interfere with employment opportunities and the support of children conceived as a result of unlawful intercourse, offer more than just plausible bases for treating section 261.5 offenders differently than other types of sex offenders. Providing for discretion in section 261.5 cases allows the trial court to order registration in appropriate situations, while maintaining flexibility in those cases where, for instance, registration might cause economic or other hardship to a child born to the minor victim and the adult offender." (*Johnson, supra,* 60 Cal.4th at pp. 884-886.)

Fourth, the Supreme Court noted the Legislature had considered and rejected on at least three separate occasions mandatory registration for individuals who violate section 261.5. (*Johnson, supra,* 60 Cal.4th at p. 886.) "Subsequent to *Hofsheier,* and to this day, the Legislature has not acted to add section 261.5 to section 290's list of offenses subject to mandatory registration. Because the Legislature has acted purposefully and consistently to preserve discretionary sex offender registration for section 261.5

9.

offenders, we may reasonably infer its public policy concerns would not be served by mandating registration for such offenders in order to cure the constitutional infirmity found by *Hofsheier.*" (*Ibid.*)  The Supreme Court concluded that because the Legislature is afforded considerable latitude in determining the consequences of crimes, the inherent capacity to cause pregnancy provided a rational basis for distinguishing between nonforcible oral copulation and unlawful sexual intercourse.  (*Id*. at p. 887)

For these reasons, the Supreme Court overruled *Hofsheier*, and disapproved of the Court of Appeal decisions that applied *Hofsheier*'s rational to other sex offenses involving minors and others.  (*Johnson, supra,* 60 Cal.4th at p. 887.)

With these cases in mind, we turn to Howell's arguments.  Howell initially identifies the issues in this case as whether sections 290.5 and 4852.01 violate his right to equal protection of the laws.  The majority of his argument, however, is directed at section 4852.01.

The portion of his argument addressing section 290.5 asserts, in essence, that if he receives a certificate of rehabilitation, he is entitled to relief from the registration requirement.  The case cited as support for his argument is *D.M. v. Department of Justice* (2012) 209 Cal.App.4th 1439 (*D.M.*).  However, the appellate court in *D.M.* relied on *Hofsheier's* conclusion that violators of section 288a, subdivision (b)(1) were similarly situated to violators of section 261.5.  The appellate court went on to reason that since 290.5 automatically relieved a defendant convicted of violating section 261.5 from the mandatory registration requirement once a certificate of rehabilitation was obtained, equal protection principles required section 290.5 to also grant relief to a defendant that violated section 288a, subdivision (b)(1) once he or she  obtained a certificate of rehabilitation.  (*D.M., supra,* at pp. 1451-1452.)

*Johnson* invalidates the reasoning of *D.M.*  Accordingly, Howell will find no support for his argument in that opinion.  Moreover, every defendant who violated the code sections identified by Howell *are precluded* from obtaining relief from mandatory

10.

registration by the provisions of section 290.5 (§ 290.5, subd. (a)(2)(L) precludes relief for defendants convicted of violating § 286, subd. (d)(2); § 290.5, subd. (a)(2)(O) precludes relief for defendants convicted of violating § 288a, subd. (d); § 290.5, subd. (a)(2)(Q) precludes relief for defendants convicted of violating § 288.7).

Turning to section 4852.01, we will assume, without deciding, that Howell is similarly situated to defendants convicted of the other crimes he has identified. Howell asserts his right to equal protection is violated because section 4852.01 allows those other defendants to obtain a certificate of rehabilitation, but will not permit him to do so.

We begin with section 288.7. A recent amendment to section 4852.01, subdivision (d) added defendants convicted of violating section 288.7 to the list of defendants who may not obtain relief pursuant to section 4852.01. (Stats. 2014, ch. 280 § 3.) Accordingly, any possible equal protection issue has been eliminated.

Howell argues, apparently, that we should not consider this amendment in this opinion. However, as Howell recognizes in his opening brief, all plea agreements incorporate not only the existing law, but also the power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. (*Doe v. Harris* (2013) 57 Cal.4th 64, 66.) Accordingly, since the recent amendment to section 4852.01 applies to Howell, indeed, since the amendment was intended to eliminate the issue on which Howell relies, we will apply current law and not limit our analysis to the law in effect at the time Howell filed his petition.

The other two crimes identified by Howell are not included in section 4852.01, subdivision (d), but, assuming the two groups are similarly situated, we conclude, under *Johnson*, there is a rational basis for treating these two groups differently. *Johnson* reiterated that rough accommodations made by the Legislature survive rational basis review. (*Johnson, supra,* 60 Cal.4th at p. 887.) Similarly, an imperfect fit between the means and end at which the Legislature is aiming also survives rational basis review. (*Ibid*.) *Johnson*'s emphasis of these two principles compels our conclusion.

11.

The two crimes at issue are section 286, subdivision (d)(2) and section 288a, subdivision (d)(2). The first section criminalizes forcible sodomy "while voluntarily acting in concert with another person, either personally or aiding and abetting that other person," upon a victim under 14. The second section criminalizes forcible oral copulation "while voluntarily acting in concert with another person, either personally or aiding and abetting that other person," upon a victim under 14. These two sections share in common the requirement that the defendant act in concert with another person. The crime of which Howell was convicted (§ 288) required that he personally commit a lewd and lascivious act on a person under 14.

The Legislature could have concluded it would not preclude a defendant convicted of violating either section 286, subdivision (d)(2) or 288a, subdivision (d)(2) from applying for a certificate of rehabilitation because that defendant may not have personally committed the act of sodomy or oral copulation, but instead may have been convicted as the aider or abettor who was acting under the influence of the defendant committing the sexual act. In these circumstances, it is rational for the Legislature to conclude the aider or abettor should be able to obtain a certificate of rehabilitation. Even if this choice is a rough accommodation, and perhaps better options exist to address this issue, *Johnson* emphasized that such choices are for the Legislature and do not offend equal protection principles. Once again, we note that even with a certificate of rehabilitation and a pardon, a defendant convicted of violating either section 286, subdivision (d)(2) or section 288a, subdivision (d)(2) are precluded from obtaining relief from the mandatory registration requirement even if they were to obtain a certificate of rehabilitation. (§ 290.5, subd. (a)(2)(L) and (a)(2)(O))

**DISPOSTION**

Because there is a rational basis for treating differently defendants who violate section 286, subdivision (d)(2) or section 288a, subdivision (d)(2) from those defendants who violate section 288, subdivision (a), Howell's right to equal protection of the laws

12.

was not violated.  Accordingly, the order denying Howell's petition is affirmed.

Howell's unopposed request for judicial notice is granted.

_____

FRANSON, J.

WE CONCUR:


_____

LEVY, Acting P.J.


_____

DETJEN, J.